Dowling and another, Respondents, vs. THE LANCASHIRE INSURANCE COMPANY, Appellant.

*December 18, 1895 — January 7, 1896.*

(1) *Constitutional law: Delegation of legislative power: Standard fire insurance policy.* (2) *Waiver of condition against incumbrances.* (3) *Proofs of loss: Evidence.*

1. The provision of ch. 195, Laws of 1891, that the insurance commissioner shall "prepare, approve and adopt a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements, or conditions as may be indorsed thereon or added thereto and form a part of such policy and contract, and such form shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy, so called and known," is a delegation of legislative power, and is therefore unconstitutional and void.

2. Issuance of a policy after the insured had fully informed the agent as to existing incumbrances on the property was a waiver of a condition in the policy that it should be void if the property was

| | |
|---|---|
| 92 | 63 |
| 92 | 236 |
| 92 | 63 |
| 93 | 350 |
| 93 | 622 |
| 93 | 627 |
| 92 | 63 |
| 95 | 308 |
| 95 | 400 |
| 95 | 620 |
| 92 | 63 |
| 98 | 264 |
| 92 | 63 |
| 101 | 421 |
| 92 | 63 |
| e102 | 16 |
| 102 | 80 |
| 92 | 63 |
| 105 | 369 |
| 105 | 334 |
| 105 | 385 |
| 92 | 63 |
| 107 | 659 |
| 107 | 663 |
| 107 | 664 |
| 108 | 156 |
| 92 | 63 |
| s31 LRA | 112 |
| 39 LRA | 285n |
| 40 LRA | 501n |

incumbered, notwithstanding a provision that there should be no waiver of any of the conditions of the policy unless such waiver was written upon or attached thereto.

3. Notice having been given to produce the original proofs of loss which had been mailed to the principal office of the insurance company, a postal card from the company acknowledging receipt of the proofs, and a copy of such proofs which had been retained by the insured, were admissible to show that the proofs had been seasonably furnished.

APPEAL from a judgment of the circuit court for Eau Claire county: FRANK M. FISH, Judge. *Affirmed.*

This is an action upon a policy of insurance issued by the defendant to the plaintiff *Dowling* in the sum of $500, $250 of which was on his stock of wines, liquors, and merchandise, and $250 upon his furniture and fixtures, in a certain saloon in Eau Claire. The policy contained an indorsement thereon as follows, to wit: "Loss, if any, payable to P. J. Bowlin & Co., mortgagee, as their interest may appear,"— under which name, it appears, the plaintiff *P. J. Bowlin* conducted business. While the insurance was in force, namely, December 9, 1893, the said property was destroyed in part, and damaged, by fire, and the total loss upon each subject of insurance exceeded the amount of the total insurance upon the property; the total concurrent insurance being $2,500, $1,250 of which was on the furniture and fixtures, and $1,250 upon the stock of wines, liquors, and saloon merchandise.

The policy in suit was the Wisconsin standard policy in use under ch. 195, Laws of 1891. It appeared that there was a chattel mortgage on the insured property, for $300, to Ann Dowling, the existence of which was not noticed or indorsed upon the policy. On behalf of the plaintiffs, evidence was given tending to show that the plaintiff *Dowling* informed the defendant's agent fully of the existence of said mortgage, as well as the $1,000 mortgage to P. J. Bowlin & Co., at the time the policy was issued, but such evidence

was objected to by the defendant. Evidence was given
tending to show that proofs of loss were made and delivered
to the defendant in due season, and also the amount of the
plaintiffs' damages.

The court instructed the jury that, if the plaintiff *Dowling*
had stated to the defendant's agent fully the existence of
these incumbrances, they would find in favor of the plaint-
iffs upon that issue, otherwise they would find for the
defendant; and gave the jury appropriate instructions in re-
spect to the question of damages. There was a verdict for
the plaintiffs for $500, for which amount, with costs, judg-
ment was given against the defendant, from which the de-
fendant appealed.

For the appellant there was a brief by *Doolittle & Shoe-
maker*, attorneys, and a supplemental brief signed by *Van
Dyke & Van Dyke & Carter*, and oral argument by *L. A.
Doolittle* and *W. D. Van Dyke.* They contended, *inter alia*,
that it may be conceded that unless ch. 195, Laws of 1891,
prohibits oral waivers of the kind in question the waiver
was effectual; but that statute provides that every policy
must contain the condition against incumbrances and that
it cannot be waived except in a certain manner. Assuming,
therefore, that the act is valid, the policy in suit was null
and void because there was a chattel mortgage on the prop-
erty and no written agreement was indorsed on the policy
to the effect that it should be valid notwithstanding the
mortgage. *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 606.
No question of estoppel arises under the statute. Both
parties are conclusively presumed to know the law; and
both parties knew, therefore, that the policy was void, there
being a chattel mortgage on the property. The act of 1891
is not invalid as an unlawful delegation of legislative power.
The power delegated has respect to two separate subject
matters, viz.: (1) the policy form; (2) "riders." In respect
to the policy form, the power delegated permitted no discre-

Dowling and another vs. The Lancashire Ins. Co.

tion on the part of the insurance commissioner and attorney general. The form to be prepared by them was required to conform to the New York form, *not* in so far as the officers *might deem* the same applicable, but "so near as the same *can be made* applicable." The power delegated was not power to make a law, for the law was complete when adopted. The New York form was by reference as effectually adopted as if it had been inserted at length in the act. *Flanders v. Merrimack*, 48 Wis. 567, 576; *Kollock v. Madison*, 84 id. 458, 461; *Jenkins v. Morning*, 38 id. 197, 201; Suth. Stat. Const. § 257. Retaliatory acts, so called (such as sec. 1221, R. S.), adopt the statutes of other states by mere reference thereto, and are uniformly held to be unobjectionable on that account. *Home Ins. Co. v. Swigert*, 104 Ill. 653; *People v. Fire Asso. of Phila.* 92 N. Y. 311; *State ex rel. Baldwin v. Ins. Co. of N. A.* 115 Ind. 257; *Phœnix Ins. Co. v. Welch*, 29 Kan. 672. The power delegated by the act was *administrative* rather than legislative. *Chicago & N. W. R. Co. v. Dey*, 35 Fed. Rep. 866. An act which confers an authority or discretion as to the execution of a law, to be exercised under and in pursuance of it, is not an unconstitutional delegation of power. *Chicago, M. & St. P. R. Co. v. Minnesota*, 134 U. S. 418, 459; *State ex rel. Hahn v. Young*, 29 Minn. 474; Cooley, Const. Lim. 114; *Wayman v. Southard*, 10 Wheat. 1, 40; *Cincinnati, W. & Z. R. Co. v. Clinton Co.* 1 Ohio St. 77, 88; *State ex rel. R. & W. Comm. v. C., M. & St. P. R. Co.* 38 Minn. 281, 289, 300; *Field v. Clark*, 143 U. S. 649. In respect to "riders," the power delegated by sec. 1 of the act is not unlimited, but is expressly confined and restricted by sec. 4 of the act. The legislature may pass general laws giving to other departments, expressly or by necessary implication, discretion to employ the proper means to fill up and regulate the details for themselves and subordinates, though the exercise of that discretion be *quasi*-legislative. Suth. Stat. Const. § 67; *In*

re Oliver, 17 Wis. 681; Bryant v. Robbins, 70 id. 258; State ex rel. Baltzell v. Stewart, 74 id. 620; Muskego v. Drainage Comm'rs, 78 id. 44; Martin v. Witherspoon, 135 Mass. 175; People ex rel. Murphy v. Kelly, 5 Abb. N. C. 383; Chicago & N. W. R. Co. v. Dey, 35 Fed. Rep. 866, and cases cited; Munn v. Illinois, 94 U. S. 113; State ex rel. R. & W. Comm. v. C., M. & St. P. R. Co. 38 Minn. 281.

For the respondents there was a brief by Geo. C. & Fred A. Teall, and oral argument by Fred A. Teall. To the point that legislative power cannot be delegated, they cited Cooley, Const. Lim. 116; Cooley, Taxation, 61; Dillon, Mun. Corp. § 96 (60); Thorne v. Cramer, 15 Barb. 112; Bradley v. Baxter, id. 122; Barto v. Himrod, 8 N. Y. 483; People ex rel. McSpedon v. Stout, 23 Barb. 349; O'Neil v. Am. F. Ins. Co. 166 Pa. St. 72; Anderson v. Manchester F. Ass. Co. 63 N. W. Rep. 241. The two cases last cited are directly in point upon the question of the constitutionality of the standard policy law.

PINNEY, J. 1. The action is upon a "Wisconsin standard policy of fire insurance," prepared, approved, and adopted by the insurance commissioner under ch. 195, Laws of 1891, which contains the condition that the policy shall be void "if the subject of insurance be personal property and be or become incumbered by a chattel mortgage," and also the stipulation that "no officer, agent, or other representative of the company shall have power to waive any provision or condition of this policy except such as by the terms of this policy may be the subject of agreement indorsed hereon or added hereto, and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto." The only waiver relied on in respect to the chattel mortgage to Ann Dowling was by parol, and the

question was whether, under such policy and the act under which it was adopted, such waiver was ineffectual, so that by the breach of the condition in relation to chattel mortgages the policy was rendered void. The circuit court having ruled that the parol waiver relied on was valid, the plaintiffs obtained a verdict; and it is contended in support of it that ch. 195, Laws of 1891, is unconstitutional and void, as a delegation to the insurance commissioner of legislative power, which the constitution (art. IV, sec. 1) declares "shall be vested in a senate and assembly," and that such parol waiver was effectual and valid under the law as it existed before the passage of said act.

That no part of the legislative power can be delegated by the legislature to any other department of the government, executive or judicial, is a fundamental principle in constitutional law, essential to the integrity and maintenance of the system of government established by the constitution. The difficulty experienced by courts in distinguishing between legislative power, which cannot be delegated, and discretionary powers of an executive or administrative character, which may be intrusted to other departments or officers in the conduct of public affairs, has been frequently experienced and acknowledged; and it arises, in a great measure, from the fact that powers of the most important character, not essentially legislative, but which the legislature might properly, in the first instance, exercise or determine by its own judgment, are frequently devolved by the legislature upon other departments, officers, or bodies. In *Moers v. Reading*, 21 Pa. St. 202, it was said that "half the statutes on our books are in the alternative, depending upon the discretion of some person or persons, to whom is confided the duty of determining whether the occasion exists for executing them. But it cannot be said that the exercise of such discretion is the making of the law." This must be understood, we think, as applicable only to cases where the

discretion is not essentially a legislative one. In *Blanding v. Burr*, 13 Cal. 358, FIELD, J., said: "Such acts are constantly passed, and yet no one has ever questioned their validity as laws because dependent in their operation upon occasions which may never arise. . . . The legislature may determine absolutely what may be done, or it may authorize the same thing to be done upon the consent of third parties. It may command, or it may only permit; and in the latter case, as in the former, its acts have the efficacy of laws."

Where an act is clothed with all the forms of law, and is complete in and of itself, it may be provided that it shall become operative only upon some certain act or event, or, in like manner, that its operation shall be suspended; and the fact of such act or event, in either case, may be made to depend upon the ascertainment of it by some other department, body, or officer, which is essentially an administrative act. In all such cases it is upon the occurrence of the fact or event that the act becomes operative or its suspension is accomplished. In *Locke's Appeal*, 72 Pa. St. 491, 498, it was declared that "to assert that a law is less than a law because it is made to depend upon a future event or act, is to rob the legislature of the power to act wisely for the public welfare whenever a law is passed relating to a state of affairs not yet developed, or to things future or impossible to know;" and it was said that the proper distinction is this: "The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action to depend." And accordingly the time when the act shall take effect may be made to depend upon the majority of a popular vote being cast in its favor under a submission to the electors for that purpose, provided in the act. *State ex rel. Att'y Gen. v. O'Neill*, 24 Wis. 149; *Smith v. Janesville*, 26 Wis. 291.

In considering the true test as to whether a power is strictly legislative, or whether it is administrative and merely relates to the execution of the law, RANNEY, J., in *Cincinnati, W. & Z. R. Co. v. Clinton Co. Comm'rs*, 1 Ohio St. 88, said: "The true distinction is between the delegation of power to make the law, which necessarily involves a discretion as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made." Substantially the same conclusion was reached in *Field v. Clark*, 143 U. S. 650, 681–694, in respect to the provisions of the tariff of October 1, 1890 (26 U. S. Stats. 612, ch. 1244, sec. 3), in respect to reciprocity of commerce, by which authority was conferred upon the president to suspend by proclamation the free introduction of sugar, molasses, coffee, tea, and hides, when satisfied that any country producing such articles imposes duties or other exactions upon the agricultural or other products of the United States which he might deem reciprocally unequal or unreasonable, and it was held that this provision was not open to the objection that it was an unconstitutional transfer of legislative power to the president. The reasoning of the court in this case goes upon the ground that, upon a proper construction of the act, it provided for the ascertainment of an event or state of affairs in view of which the provision for reciprocity of trade should cease to exist.

The application of the distinction so well established and clearly pointed out in these cases is, we think, decisive of the validity of the act in question. Its object was to provide for a uniform policy of fire insurance, to be made and issued by all companies taking such risks, so that no other than the standard policy, prepared, approved, and adopted by the insurance commissioner, could be lawfully issued or used within the state. Indeed, to issue or deliver any other

than the standard policy was made a misdemeanor and punishable by a fine. *Bourgeois v. N. W. Nat. Ins. Co.* 86 Wis. 609. Although the act provided for "a printed *form* in blank of a contract or policy of fire insurance, together with such provisions," etc., it provides also that they were to form a part of such contract or policy, so that the essential substance of the contract required to be embraced in such form should have the sanction, force, and effect of a legal enactment; and, as applicable to the present case, the stipulations of such policy would operate, under the act, to change the law as it had previously existed in relation to parol waiver of forfeitures by the conditions of fire insurance policies. The act, in our judgment, wholly fails to provide definitely and clearly what the standard policy should contain, so that it could be put in use as a uniform policy required to take the place of all others, without the determination of the insurance commissioner in respect to matters involving the exercise of a legislative discretion that could not be delegated, and without which the act could not possibly be put in use as an act in conformity to which all fire insurance policies were required to be issued. Giving full effect to all the language of the act, as we must do, it provides that the insurance commissioner shall, within sixty days of the passage of this act, "*prepare, approve, and adopt a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy; and such form shall, as near as the same can be made applicable, conform to the type and form* of the New York standard fire insurance policy, so called and known; provided, however, that five days' notice of cancellation by the company shall be given, and provided, that proof of loss shall be made within sixty days after a fire." The insurance commissioner was authorized to call upon the attorney general "for such assistance as shall

seem necessary in the preparation" of such policy, and it was the duty of the attorney general to perform such service. The insurance commissioner was required, on or before September 1, 1891, to file in his office the printed form in blank of such contract or policy, and immediately thereafter he was to have 500 copies of the same, with this act, printed, and to mail to each company doing a fire insurance business in the state copies of the same. The fourth section provides that after September 1, 1891, no such insurance company shall use any other form of policy, and "no other or different provision, agreement, condition or clause shall, in any manner, be made a part of said contract or policy or be indorsed thereon or delivered therewith, except" that certain "riders" may be used, which are in no case to be "inconsistent with or a waiver of the conditions of the standard policy" therein provided for.

It was impossible to adopt the New York standard policy without repealing certain statutes of this state on the subject of fire insurance, directly contravening the provisions of such policy, viz., the valued policy law and the insurance agency law. R. S. secs. 1943, 1947. The act did not contain any repealing clause, but its evident intention was that the various statutory provisions existing upon the subject of cancellation of policies, and under the by-laws, rules, and regulations of companies made pursuant to their charters, and in respect to proof of loss, should be repealed; for it was provided that five days' notice of cancellation should be given, and proof of loss should be furnished within sixty days after the fire. The New York standard policy provides that proof of loss shall be furnished within sixty days after the fire, "unless such time is extended in writing by the company," — a provision omitted from the Wisconsin policy, as approved and adopted, as well as the provision of the New York policy that "no suit or action on this policy shall be sustainable in any court of law or equity until after

full compliance by the insured with all the foregoing requirements, or unless commenced within twelve months next after the fire," to avoid, it is said, conflict with secs. 4219, 4222, R. S., of the general statutes of limitation.

As the legislature could not, for reasons thus indicated, adopt the New York standard policy, the power was so delegated by the act to the insurance commissioner, to prepare, approve, and adopt a printed form in blank of a contract or policy of fire insurance, etc., which would, "*as near as the same can be made applicable*, conform to the type and form of the New York standard fire insurance policy." The result was that, until the discretion vested in the commissioner should be exercised and such form was so approved and adopted, no business of insurance could be transacted under the act. Until then the act was ineffectual, for want of certainty. Evidently, the conformity to "type and form" of the New York standard policy had reference to the form of that policy as embracing the substance of the provisions of the contract, and as to the size and kind of type to be used in printing the policy to be adopted. Had the commissioner wholly declined to prepare, approve, and adopt any form whatever, it would not have been possible to have carried into effect so imperfect or uncertain an enactment, or to transact business under it. Within the lines indicated, a discretion was reposed in the commissioner as to the form of the policy which embodied the substance of the contract, and which was to have the sanction and force of law. The effect, clearly, was to transfer to him bodily the legislative power of the state on that subject. Within the limits prescribed, he was to prepare just such a policy or contract as, in his judgment and discretion, would meet the *legal* exigencies of the case, and no one could certainly predict what the result of his action might be. It was not to be published, as laws are required to be, or to be approved by the governor. It was to be filed in the office of the insurance commissioner,

Dowling and another vs. The Lancashire Ins. Co.

instead of being deposited in the office of the secretary of state, and its use was to be enforced by the penal sanction of the act. He was not required by the act to perform any mere administrative or executive duty, or to determine any matter of fact for the purpose of executing or carrying the act into effect.

The result of all the cases on this subject is that a law must be complete, in all its terms and provisions, when it leaves the legislative branch of the government, and nothing must be left to the judgment of the electors or other appointee or delegate of the legislature, so that, in form and substance, it is a law in all its details *in præsenti*, but which may be left to take effect *in futuro*, if necessary, upon the ascertainment of any prescribed fact or event. Instead of preparing a form of standard policy and adjusting it to the existing legislation, or modifying such legislation, if necessary, by virtue of its constitutional functions, the legislature delivered over this task wholly to the insurance commissioner, to accomplish it as nearly as might be; and this depended wholly upon his discretion and judgment as to what the law should be in this respect, for the act had not specifically declared it. Conceding that the legislature might have adopted the New York form as an entirety by the use of general language, it is evident that the proposed form, to conform "as near as can be to the form adopted in New York," involved a duty equivalent to that of revision, which it cannot be contended could be delegated, except subject to legislative approval. While the commissioner, within the discretion intrusted to him, might have approximated in a great degree to the policy which the legislature may have intended, the objection, in view of the consideration stated, that it has not received the legislative sanction, is necessarily fatal to it.

The cases of *State ex rel. R. & W. Comm. v. C., M. & St. P. R. Co.* 38 Minn. 298, and *Chicago & N. W. R. Co. v. Dey,*

35 Fed. Rep. 866, 874, are not in conflict, but in harmony, with the conclusion we have reached, as to what is and what is not an unconstitutional delegation of the legislative power.

For these reasons, we hold that the provision authorizing the insurance commissioner to prepare, approve, and adopt a printed form in blank of a contract or policy of fire insurance, together with such provisions, agreements, or conditions as may be indorsed thereon or added thereto and form a part of such contract or policy, and that such form shall, as near as the same can be made applicable, conform to the type and form of the New York standard fire insurance policy, so called and known, is unconstitutional and void. Conclusions in accord with these views, in somewhat similar cases, have been reached in other states. *Anderson v. Manchester F. Ass. Co.* (Minn.), 63 N. W. Rep. 241; *O'Neil v. Am. F. Ins. Co.* 166 Pa. St. 72. The instruction of the court to the jury that if the plaintiff *Dowling*, at the time the policy was issued, stated to defendant's agent fully the existence of the incumbrances, they would find in favor of the plaintiffs, was correct and in conformity with previous decisions of this court on the subject of waiver of conditions of forfeitures in the policy against incumbrances. *Renier v. Dwelling House Ins. Co.* 74 Wis. 94, and cases there cited; *Bourgeois v. Mut. F. Ins. Co.* 86 Wis. 402.

2. Evidence was given tending to show that proofs of loss under the policy were prepared and mailed to the company at their principal office, and that a postal card had been received from the defendant acknowledging receipt of the same. A copy of the proofs was delivered to the local agent of the defendant, and a copy retained by the plaintiffs' attorney, which, with such postal card, were offered in evidence, against the defendant's objection, it being conceded that notice had been given to produce the original proofs. It was competent to show in this manner that proofs of loss

had been seasonably furnished to the company, although such proofs were not competent evidence of the facts therein. contained. We therefore see no objection to the admission in evidence of the copy of proofs and the postal card in question. It does not appear that any objection had been made to the proofs, and we do not think that the defendant has any just ground of complaint on account of the ruling.

3. It is urged as ground for reversal that the evidence showing the amount of the plaintiffs' damages was insufficient to warrant the amount of the verdict. Without recapitulating the evidence, we will content ourselves with saying that we think it was sufficient to warrant the finding of the jury.

It does not appear that any ground exists for a reversal of the judgment.

*By the Court.*— The judgment of the circuit court is affirmed.

