ADAMS, Appellant, vs. THE CITY OF BELOIT and others, Respondents.

*October 24, 1899 — February 2, 1900.*

*Constitutional law: "General city charter law:" Uniformity: General laws: Option legislation: Street improvements: Repaving: Costs.*

1. The test whether a law is in violation of sec. 31, art. IV, Const. (forbidding the enactment of any special or private law incorporating any city, town, or village, or to amend the charter thereof), is not the present territorial effect of the law, but whether, within approved legal rules, it is in effect a general law and uniform in its operation throughout the state.

2. Sec. 926, Stats. 1898, authorizing any city organized under any special charter to "adopt the provisions of any special chapter, section, or subdivision of any section" of the "general city charter law" (ch. 40a, Stats. 1898), is not in conflict with sec. 31, art. IV, Const., though its result be to amend the charter of but one city, which is the only city in the state within one of the classes designated.

3. Option legislation, if otherwise unobjectionable, is not made special legislation, nor does it lack uniformity, because but one municipality accepts it; and there may be option legislation for the benefit of a proper class.

4. Where streets in a city have been once improved at the expense of adjoining property, sec. 925—175, Stats. 1898, authorizes their reimprovement at the expense of the property to be benefited thereby. Sec. 925—177, Stats. 1898, does not limit the positive authority given in the previous section.

5. The word "relaying" in sec. 925—177, Stats. 1898, must be construed as simply covering the relaying of some part of an existing pavement, in the ordinary course of repairs, and not the entire repaving of the street.

6. The rule as to costs taxable in favor of defendant is that different parties, with different interests, are entitled to be represented by different attorneys, and that, so far as one proceeding can properly serve for all the defendants jointly, the expense of but one proceeding should be taxed, but where separate services are necessary and proper, for defendants whose interests are separate, they may be taxed and recovered for.

7. CASSODAY, C. J., dissenting, is of the opinion that the decision in this case practically nullifies so much of the constitutional amendment of 1892 (sec. 31, art. IV, Const.) as prohibits the legislature from enacting any special or private law amending the charter of any city; and that the attempt of the legislature, in the "general city charter law," to clothe each of the cities, under special charters, with power to amend its own charter, is a direct violation of said section.

APPEAL from a judgment of the circuit court for Rock county: JOHN R. BENNETT, Circuit Judge.  *Affirmed.*

This is an equitable action brought to set aside certain paving assessments against the plaintiff's property, in the city of *Beloit,* and also certain improvement bonds issued upon such assessments.  The city of *Beloit* was a city organized under a special charter prior to the passage of the general city charter law.  On the 2d of July, 1895, the common council of the city, by an ordinance which was passed with all due formality, attempted to adopt certain parts of ch. 326, Laws of 1889, as amended by ch. 312, Laws of 1893,

Adams vs. The City of Beloit and others.

and ch. 320, Laws of 1895, being what is known as the general city charter law. Said ordinance included, among other provisions, secs. 172, 173, and 175 to 200, inclusive, of said general city charter law; the sections so adopted being those sections relating to public improvements, and the levying of assessments therefor. By the terms of said ordinance, the sections so adopted were adopted in lieu of the provisions of the special charter of the city upon that subject. In the year 1896 the common council, acting under the provisions of the general charter law so formally adopted, caused to be graded, curbed, and paved certain streets in said city, including Bridge street, and made assessments therefor against the adjoining property, and issued improvement bonds therefor. Such proceedings were in all respects regular under the provisions of the general city charter law, but were not in accord with the special charter provisions, because no petition for such paving was ever made. It appeared that in 1868 and in 1883 said street had been constructed to conform to the grade then existing, and graveled, as required by the common council, and that special assessments had been made therefor against the plaintiff's property, and had been paid; the said property so assessed being the same property against which the assessments now complained of were made. The court found the assessments valid, and the plaintiff appealed.

The cause was submitted for the appellant on briefs by *Ruger & Ruger*, and for the respondents on separate briefs by *William A. Jackson*, attorney for *Thorpe*, and *John C. Rood*, attorney for the other respondents.

Counsel for the appellant contended, *inter alia*, that the common council did not, perforce of its adoption of the ordinance, acquire power to act under the provisions of the general city charter law in question, for the reason that sec. 267, ch. 326, Laws of 1889, as amended by sec. 72, ch. 312, Laws of 1893, and sec. 1, ch. 320, Laws of 1895, is unconsti-

tutional. *State ex rel. Haswell v. Cram,* 16 Wis. 343, 345;
*Dowling v. Lancashire Ins. Co.* 92 Wis. 63; *Stevens Point B.
Co. v. Reilly,* 44 Wis. 295, 300, 301; *Smith v. Sherry,* 50 Wis.
210; *Johnson v. Milwaukee,* 88 Wis. 383; *Boyd v. Milwau-
kee,* 92 Wis. 456; *Burnham v. Milwaukee,* 98 Wis. 128, 135;
*State ex rel. Childs v. Copeland,* 66 Minn. 315; *Larcom v. Olin,*
160 Mass. 102; 1 Dillon, Mun. Corp. (4th ed.), §§ 45, 46. Sec.
72, ch. 312, Laws of 1893, and sec. 1, ch. 320, Laws of 1895,
are unconstitutional in that they attempt an unauthorized
delegation of legislative power. *State v. Copeland,* 66 Minn.
315; *In re North Milwaukee,* 93 Wis. 616; *State ex rel. Adams
v. Burdge,* 95 Wis. 390.

WINSLOW, J. The questions arising in this case are purely
questions of law. The constitution of Wisconsin prohibits
the enacting of any special or private law "incorporating
any city, town or village, or to amend the charter thereof"
(Const. art. IV, sec. 31), and further provides that general
laws shall be provided for such purpose, and that such gen-
eral laws shall be "uniform in their operation throughout
the state" (art. IV, sec. 32). In order to carry out these
constitutional provisions, a general charter law was passed
in 1889 (ch. 326, Laws of 1889), which, with its subsequent
amendments, now appears as chapter 40a of the Statutes of
1898. This general charter act originally divided all cities
which might adopt it or be organized under it into three
classes, according to population, and provided a complete
charter for cities of each class. It also provided that any
city existing under special charter might adopt the act by
vote of three fourths of the members of its common council.
Subsequently, by amendatory acts, the number of classes of
cities was changed from three to four, based also on popula-
tion, and cities under special charters were divided into like
classes. By sec. 72, ch. 312, Laws of 1893, it was further
provided that any city organized under a special charter

might "adopt the provisions of any special chapter, section or subdivision of any section of this act [ch. 326, *supra*], and may exercise any power or franchise hereby conferred upon cities organized under this act in addition to, or in lieu of the provisions of its special charter," by ordinance to be adopted with certain formalities. This provision was re-enacted by sec. 1, ch. 320, Laws of 1895, and now appears incorporated in sec. 926, ch. 40*b*, Stats. 1898. The city of *Beloit* was a city incorporated under a special charter, and it attempted, with all the required legal formalities, to take advantage of this last-named provision, and to adopt the entire scheme contained in the general charter for making street improvements in lieu of the provision of its special charter; and the first and gravest question in the case is whether the law which purports to authorize such adoption is a valid and constitutional law. The contention of the plaintiff is that the legislature itself could not amend the charter of the city of *Beloit* alone; that such an amendment, if attempted to be made, would be a special or private law, not uniform in its operation through the state, and hence void, under the constitutional provision above quoted; and that the legislature cannot delegate to the common council of a city a power which it cannot exercise itself. Upon the other side the contention is that the law is a general law, complete in itself upon the statute books, and that it is not rendered special because it is to become effective in a certain locality upon the determination of some fact by some local authority or body.

That the question is of the utmost importance is apparent. This provision has now been upon the statute book for more than six years. That it has been acted upon by numerous cities incorporated under special charters admits of no doubt. Several cases involving the validity of such attempted action have already been before this court (*Gilbert-Arnold L. Co. v. Superior*, 91 Wis. 353; *McCue v. Waupun*, 96 Wis.

625; *Herman v. Oconto*, 100 Wis. 391), and in one of these cases (*McCue v. Waupun*) certain provisions of the general charter law were held to have become a part of the charter of the city by an ordinance of adoption, while in the other cases it was held that the adoption was not effective for other reasons. It is true that in none of these cases was the question of constitutionality raised or argued, and hence they are not authority upon that question, but they are simply cited as tending to demonstrate the fact that the provisions for adoption of parts of the general charter have been used by numerous cities. Doubtless, there have been contracts made, property rights acquired, and liabilities incurred in many municipalities upon the faith of such adopted provisions. These considerations are not very weighty, perhaps, and cannot operate to make an unconstitutional law constitutional, but they ought certainly to incite the greatest care in the consideration of the question, and to require that the alleged unconstitutionality be made very clear.

Similar constitutional provisions have been adopted in many states for the evident purpose of repressing the flood of special legislation, and to secure a measure of uniformity, instead of almost infinite diversity, in the fundamental laws governing municipal corporations. Under such provisions there has been no lack of adjudications upon questions quite similar to those involved here, but it must be confessed that the decisions are not by any means harmonious. Some propositions, however, are quite well established, not only by the great weight of judicial authority in other jurisdictions, but by direct adjudication of this court. Among these propositions which are not now to be doubted are the following: First. A law otherwise unobjectionable is not invalid simply because power is given to some local officials or body of electors to determine the existence of a fact upon which it shall go into effect in the given locality, if the law itself is a complete law upon the statute books. This is not the dele-

gation of power to make a law, but simply the delegation of power to determine or ascertain some fact upon which the action of the law which is complete in itself is to depend. *State ex rel. Att'y Gen. v. O'Neill*, 24 Wis. 149; *Smith v. Janesville*, 26 Wis. 291; *Slinger v. Henneman*, 38 Wis. 504; *Dowling v. Lancashire Ins. Co.* 92 Wis. 63; *In re North Milwaukee*, 93 Wis. 616. Nor does such option feature make it a special law. Black, Intoxicating Liquors, § 45, and cases cited in note. Second. It is not necessary, in order to make a law affecting municipal corporations a general law, that it should affect every city in the state. Cities may be classified, and, if the classification be proper, laws may be passed affecting only a single class, and such laws will be general laws, and uniform in their operation throughout the state, within the meaning of the constitution. *Johnson v. Milwaukee*, 88 Wis. 383. Third. The constitutional amendment in question having been made after large numbers of cities had been organized under special charters, and not providing for compulsory surrender or superseding of such charters, there resulted, *ex necessitate*, a constitutional division of the cities of the state into two classes, namely, those continuing to operate under special charters, and those organized under the general charter law. *Johnson v. Milwaukee, supra.* Fourth. Classification by statute must be based upon some substantial and real differences of situation. It must be a distinction germane to the purpose of the law. It must not be based on existing circumstances only, so as to preclude additions to the class, and any law relating to the class may apply to all members of the class. *Johnson v. Milwaukee, supra.*

Now, under these admitted legal principles, it cannot be doubted that had the legislature passed a law providing a complete system for the construction of city improvements, and declared that it should govern all cities in the state incorporated under special charters, in lieu of the various pro-

visions on the subject contained in their several charters, such a law would be held to be a general law having uniform operation throughout the state. It would be general, because it applied to the whole of a constitutional class. It would be uniform throughout the state, not because it would operate over every square mile of land in the state, nor govern the rights of even a majority of the citizens, but because, wherever in the state a city of the class was found, it would at once operate.

The same result would necessarily follow had the legislature provided, by a section of the general charter law itself, that some portion of that law, complete in itself (such as the provisions governing city improvements), should govern all the cities of the state incorporated under special charters. No one, we think, could question the effectiveness of such provisions under the law as laid down in the *Johnson Case.* But, instead of making a law which is compulsorily effective at once upon the entire class, the legislature has provided that the law, which is complete in itself on the statute books, shall go into effect in any city of the class only when the city council shall decide by the adoption of an ordinance to that effect. It is, in effect, a local option law, confined to a class of cities; and the question is whether the option feature renders it unconstitutional, or, in other words, Can it be a general law, and uniform in its operation throughout the state, when it may never become effective in more than one city of the class? Right here we think there is confusion in the appellant's argument. The contention made by the appellant is practically this: The legislature could pass no law amending the special charter of the city of *Beloit* alone. The effect of this option legislation, when adopted by the city council of *Beloit*, is to amend the special charter of *Beloit* alone. The legislature cannot do indirectly what it cannot do directly; nor can it authorize the city council of a city to enact legislation which is prohibited by the con-

stitution to the legislature itself. Hence both the act of the legislature and the ordinance of the council must be void. The argument, at first glance, seems persuasive, but we are convinced that it is unsound. It proceeds upon a false assumption, and that is that the test of constitutionality is the present effect of the law, whereas the test is found by answering the question, Is the law a general law, and uniform in its operation throughout the state, within legal definitions? A law may affect at present but one city in the state, and still be general and uniform, within the meaning of the constitution. For instance, all laws applicable only to cities of the first statutory class (i. e. cities containing over 150,000 inhabitants) can at present, and for years to come, affect only the city of Milwaukee; and yet it is not doubted that such laws are general laws, and uniform in their operation, within the meaning of the constitution. Indeed, the illustration may be carried further. There are at present no cities in the state of the second class organized under the general law, yet there is a complete charter standing upon the statute books for such cities; and we think none will contend that this part of the law is not general, or not uniform in its operation, because as yet there are no cities organized under it. So we say that the test is not found in the present territorial effect of the legislation, but in the character of the legislation itself, tested by approved legal rules.

Having shown that a law may in fact be in actual operation in but one city in the state, but still be a general law and uniform in its operation within the constitutional requirement, it remains to be seen whether the option feature of the law is fatal. Upon this subject, it is important to observe that the original general charter law (ch. 326, Laws of 1889) contained an option clause, by the terms of which any city in the state, organized under special charter, could, by action of its common council, surrender that charter, adopt that act, and become a city under the general char-

ter act. Hence the law as originally passed was, as regards all cities acting under special charters, a local option law, which might by its terms become effective in one city of the class, or in two or three, or in none, as might be decided by the various common councils. It has not been argued here that such option clause was invalid, but it is difficult to see why the argument against its validity is not just as persuasive as the argument now made against the law authorizing the adoption of an integral part of the act. The argument would run thus: The legislature could not pass an act amending the charter of the city of *Beloit* alone, by substituting the general charter therefor. The legislature cannot authorize the common council of *Beloit* to make a law which it cannot constitutionally make itself. Hence the option clause, and any action taken thereunder, are void. Surely, however, this argument could not be sustained. The object of the constitutional amendment and the general charter law was not to repeal all existing city charters by a single stroke, and thus throw the affairs of every city in the state into confusion, but to provide one comprehensive city charter for each statutory class, and to provide means by which existing cities might, at their leisure, and after examination, elect to place themselves under its provisions; thus, in the course of time, securing the desired uniformity without violent shock. Must it be said that the option feature of the law violated the constitution, and rendered it impossible for any city under special charter to place itself under the general law? We think not. As we have already seen, a law, general in its terms and complete in itself, is not made special because it is limited to go into effect upon the contingency of the determination of a fact by a local body of electors or official board; nor does it lack uniformity of operation because it is limited to a proper class. If, then, this option given in the original law to every member of the whole class of specially chartered cities was a valid

law, what sound reason can be assigned for holding that the option to accept a definite and complete part of the general charter is invalid? It might well be that there would be serious objection to such a law, so far as it attempts to provide for the optional adoption of a mere section or part of a section which covers only a part of a subject, and is not complete in itself, and which, when adopted, would produce confusion, and not provide a complete scheme for the government of the subject to which it pertains. The objection which might be urged with force to such an attempted adoption would be that the law so adopted does not fulfill the universal requirement of optional laws, namely, that they must be complete laws prior to their adoption. But this question is not presented by the record. As previously stated, the adoption here was an adoption of a complete scheme for the making of city improvements by-cities in lieu of the scheme of the special charter.

View the subject as we may, we have been unable to convince ourselves that this option legislation is clearly unconstitutional; and we should be able to say that the act is unconstitutional, beyond reasonable controversy, before setting it aside.

Option legislation upon proper subjects is now universally upheld, and declared to be general legislation, and not special legislation, nor to constitute a delegation of legislative power. Black, Intoxicating Liquors, § 45; *Locke's Appeal*, 72 Pa. St. 491; *State ex rel. Maggard v. Pond*, 93 Mo. 606; *State ex rel. Sanford v. Court of Common Pleas*, 36 N. J. Law, 72. While the great majority of the decisions upon the subject are with reference to liquor laws, still there are decisions upholding such legislation with reference to many other matters,— especially those affecting local or municipal government. *State ex rel. Warner v. Hoagland*, 51 N. J. Law, 62; *In re Cleveland*, 53 N. J. Law, 188; *People ex rel. Grinnell v. Hoffman*, 116 Ill. 587. Such legislation is also

upheld where there is a constitutional requirement of uniformity of operation. *Gordon v. State*, 46 Ohio St. 607; *Groesch v. State*, 42 Ind. 547. The ground of these holdings is that uniformity does not mean that every law must be in constant operation over the whole territory of the state, and affect every citizen, but that its operation should be uniform in all parts of the state, under the same circumstances and conditions. It is only in this sense that any law relating to a class of cities alone can be said to be of uniform operation, and in the same sense it seems certain that optional legislation for a class is equally uniform. The class is a constitutional class. Every city of the class may take advantage of the law. Thus, the law is operative alike in every part of the state where there is a city of the class which places itself within its provisions.

This question of uniformity is the most serious question in the case beyond doubt, and there are very respectable courts which hold adversely to our views upon this point. *State ex rel. Childs v. Copeland*, 66 Minn. 315; *Comm. v. Denworth*, 145 Pa. St. 172. But, after careful consideration of such cases, we feel unable to follow them. The conclusions we reach are, in brief, that legislation applicable to a proper constitutional or statutory class of cities is general and uniform in operation; that option legislation, if otherwise unobjectionable, is not made special legislation, nor does it lack uniformity, because but one municipality accepts it; and that there may be option legislation for the benefit of a proper class.

There are some minor contentions which must receive consideration. The claim is made that, because the street has once been improved, by graveling to grade, at the expense of the adjoining property, no further paving can be done at the expense of the adjoining property, but that, if done, it must be paid for from public funds. We think this contention cannot be sustained. By sec. 173 of the general

charter law adopted by the council (Stats. 1898, sec. 925—173), it is provided that the grade of all streets shall be established and recorded, and that no street shall be worked until that is done. By sec. 925—175 the city is authorized to open all streets, and to level, relevel, grade, regrade, gravel, regravel, macadamize, pave, and *repave* said streets with stone, wood, or other material, and that the expense thereof may be paid in whole or in part by the city, *or by the property to be benefited thereby*, as the council shall direct, but that the assessments shall not exceed the benefits, except in case of sidewalk. By sec. 925—177 it provided that "the expense of *maintenance, relaying*, keeping in repair and cleaning of streets," in all cases where they have once been constructed to grade, and graveled, planked, macadamized, or paved, as required by the council, shall be paid from the general city or ward fund. It will be seen that by sec. 925—175 it is expressly provided that streets may be paved *and repaved* at the expense of property benefited. This may be held to mean what it says, and when, in sec. 925—177, it is provided that the expense of maintenance, relaying, keeping in repair, and cleaning of streets which have been once paved shall be paid from the city or ward fund, a construction must be given to the words which will harmonize with the previous section, if such construction be possible. Keeping this in mind, we think it entirely reasonable to construe the latter section as referring only to what may properly be called repairs or maintaining in good condition an existing pavement, and not to the laying down of a new and different pavement. The word "relaying" is the only word whose meaning could be regarded as doubtful, and we think, in view of the connection in which it is used, and the positive authority given in the previous section to *repave* at the expense of adjoining property, that it must be construed as simply covering the relaying of some part of an existing pavement in the ordinary course of repairs, and not the entire repaving of the street.

Adams vs. The City of Beloit and others.

In this case there were three sets of defendants: (1) the city and its officers; (2) the county treasurer of Rock county; and (3) the holders of the improvement bonds issued by the city upon the plaintiff's property; and different relief was prayed against each set. These three sets of defendants appeared separately, and served separate answers, and were represented by separate counsel through the action in the trial court. Separate bills of costs were allowed to each set of defendants. Objection was made generally to the allowance of more than one bill of costs, and specific objections were made to the taxing of certain items more than once; the principal of such items being the retaining fee, the fees for attendance on the trial, and the term fees. The rule is that different parties, with different interests, are entitled to be represented by different attorneys; that, so far as one proceeding could properly serve for all the defendants jointly, but one proceeding should be taxed for. In this category would fall the findings and judgment in the present case, which were taxed but once. But, where separate services are necessary and proper for defendants whose interests are separate, they may be taxed and recovered for. *Terry v. Chandler*, 23 Wis. 456. We do not think there was any violation of these rules in this case. A supplemental case was served by the respondents, but it was unnecessary, and will not be allowed for in the taxation of costs. But one bill of costs will be taxed in this court.

*By the Court.*— Judgment affirmed.

CASSODAY, C. J. After careful consideration, and with due regard for the opinions of my associates, I am forced to the conviction that the decision in this case practically nullifies so much of the constitutional amendment of 1892 as prohibits the legislature "from enacting any special or private law . . ." for amending the charter of any city. Sec. 31, art. IV, Const. To appreciate the scope and effect of

the decision, it is well to remember that, prior to the con-
stitutional amendment of 1871, laws were constantly being
enacted, during each session of the legislature, on almost
every variety of subjects, which by their terms were limited,
not only to one or more cities, but also to one or more
towns, villages, or counties. The abuse became intolerable,
and so the constitutional amendment of 1871 was adopted
and ratified. That amendment expressly prohibited the
legislature "from enacting any special or private laws," in
nine different classes of cases, including (7) the granting of
"corporate powers or privileges, except to cities;" and (9)
"for incorporating any town or village, or to amend the
charter thereof." Sec. 31, art. IV, Const. That amendment
of 1871 left the legislature free to enact any special or pri-
vate laws for incorporating any city, or to amend the char-
ter thereof. As soon as that fact became generally under-
stood, the legislature was from time to time induced, through
local influence, to transform almost every village in the state
into a city, under a special charter, to be equipped with a
mayor and common council. The abuse was not confined
to incorporated villages, but in some instances small groups
of inhabitants were incorporated, under special charters, as
cities, with such officials as were known to cities. The re-
sult was that Wisconsin became noted for its numerous
cities; and as each city was under a special charter peculiar
to itself, any litigation as to the construction of such char-
ter settled nothing as to any other charter, unless it hap-
pened to contain the same or similar provisions. Litigation
naturally increased, and confusion multiplied. Such abuses
led to a general demand for a constitutional amendment
prohibiting the legislature "from enacting any special or
private laws . . . for incorporating any city . . . or
to amend the charter thereof." Joint resolution No. 4, to
that effect, was proposed to and passed by the legislature of
1889. At the same session of the legislature, and in antici-

pation of the final adoption and ratification of the proposed amendment, the legislature passed a general charter act, containing 269 sections, and dividing cities into three classes, with enactments peculiar to each class. Ch. 326, Laws of 1889. But the act expressly provided that no city which was then incorporated under the laws of this state should be affected by the provisions of that act unless such city should adopt the same for its government, in the manner therein prescribed, and that when so adopted, and a patent issued therefor, such city should cease to exist as a corporation under its then existing charter and laws, and should thereupon constitute a municipal corporation under such general charter act, and should be governed by its provisions. Secs. 3, 4, ch. 326, Laws of 1889. But the act also provided that all cities then organized and existing under any such special law should have authority to exercise certain powers therein granted. Secs. 249–267. Thus, the act of 1889 furnished a complete charter for each city of each of the three classes mentioned therein, and left it optional with such city to adopt such charter or not. All concede that the legislature had the power to thus leave it optional with each of such cities to accept such charter so completely framed and enacted by the legislature. The constitutional amendment so proposed and passed by the legislature of 1889 was agreed to by joint resolution No. 4, passed in 1891, and the same was ratified by the people in 1892. By that amendment the constitution was made to declare that: "The legislature is prohibited from enacting any *special or private laws* in the following cases: . . . (9) For incorporating any city, town or village, *or to amend the charter thereof.*" Sec. 31, art. IV, Const. "The legislature *shall provide general laws* for the transaction of any business *that may be prohibited by sec. 31* of this article, *and all such laws shall be uniform in their operation throughout the state.*" Sec. 32. It is true that this last section first appeared in the

amendment of 1871, but it was never applied to cities until the amendment of 1892. By that amendment it was supposed by many that the state was in a fair way to have uniform charters for cities, as classified, since every amendment of such existing special charters, if made by "general laws" which would "be *uniform in their operation* throughout the state," would tend, from time to time, to make such charters more and more in conformity with each other. But the next legislature after the ratification of that amendment manifestly had a different purpose. That legislature, after dividing cities into four classes, and amending several provisions of ch. 326, Laws of 1889, amended sec. 267 of that act so as to read as follows: "Any city now organized under a special charter, may adopt the provisions of any special chapter, section or subdivision of any section of this act, and may exercise any power or franchise hereby conferred upon cities organized under this act, in addition to, or in lieu of, the provisions of its special charter, and the powers and franchises therein specified by an ordinance adopted for that purpose by a three-fourths vote of all the members of the common council elect, and when adopted as herein prescribed, such ordinance *shall operate to that extent as an amendment of such special charter.* . . . No city, however, shall be deemed to have surrendered its special charter and organized under this act, until it shall have adopted all its provisions in full, as hereinbefore provided." Sec. 72, ch. 312, Laws of 1893. Such provisions were continued in sec. 1, ch. 320, Laws of 1895, and power was given to each city under a special charter to declare the class to which it belonged, and to adopt the provisions of that act, or any part thereof, relating to cities of such class, and to adopt any part of the section or sections of that act relating to officers of such city, and to add thereto and include therein any officer provided by such special charter. Id.

In addition to the four classes of cities under the general

charter acts mentioned, this court has been obliged to recognize that, in the very nature of things, cities still remaining under special charters necessarily constituted a separate and independent class of cities, and hence that a statute conferring a new power upon *all cities* existing under special charters was a general law, and uniform in its operation throughout the state, within the meaning of the constitutional provision quoted, and hence valid. *Johnson v. Milwaukee,* 88 Wis. 383, 389–392. In a later case the validity of an act limiting the amount to be raised by taxation in the towns of a certain county was seriously doubted, on the ground that the enactment was special legislation, within the meaning of secs. 31, 32, art. IV, Const. *Crandon v. Forest Co.* 91 Wis. 239, 242. In the same volume it was held that an act for the drainage of certain lands in Dane county, and the levy of taxes to pay the expense thereof, was a special act, and therefore in violation of those sections of the constitution. *State ex rel. Turner v. Bell,* 91 Wis. 271. In a still later case it was held that an act relating to assessments for paving and repaving streets "in any city having a population of over 20,000 inhabitants or more" was a general law, and therefore not in violation of the constitutional provisions quoted. But in the same case it was held that another act which purported to legalize contracts and special assessments for street improvements in certain cases, and by its terms applied to cities of the first and second classes, and therefore in fact applied only to the city of Milwaukee, was, so far as it attempted to cure past irregularities, a special act, and hence void, under the constitutional provisions quoted. *Boyd v. Milwaukee,* 92 Wis. 456, 464. In a still later case, where the facts were similar to those referred to in 91 Wis. 239, and 91 Wis. 271, cited above, the act was held to be void, and Mr. Justice PINNEY, speaking for the whole court, said: "The power to levy taxes is undoubtedly one which belongs exclusively to the legislative department,

and, when exercised by a *delegate town or city*, through its officers, the legislature only exercises a power through its subordinate agents which it could exercise directly. *Meriwether v. Garrett*, 102 U. S. 472, 501; *New Orleans v. Clark*, 95 U. S. 644, 654. . . . The object of sec. 31, art. IV, Const., was to restrict and lessen the evils of special legislation, so appropriately and vigorously stated by RYAN, C. J., in *Kimball v. Rosendale*, 42 Wis. 415. . . . We hold, therefore, that the restriction against special legislation ' for assessment or collection of taxes or extending the time of the payment thereof' embraces all the proceedings for raising money by the exercise of the power of taxation, from the inception of the proceeding to its conclusion, and took from the legislature all jurisdiction, past, present, and future, of special legislation on the subject." *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 85, 88. In a still later case it was held that an act of the legislature providing "that the common council of any city of the first class, *during the year 1897*," might issue bonds in the manner therein indicated, not exceeding a certain amount, for the purpose of erecting garbage-reduction works, was held to be special legislation, and in violation of the constitutional provisions quoted, since Milwaukee was the only city of the first class in the state, and no other could possibly come into that class during the year 1897. *Burnham v. Milwaukee*, 98 Wis. 128, 135.

Such adjudications are cited, not because they are necessary to explain the meaning of the constitutional provisions quoted, but merely to show that this court has repeatedly recognized the full force and effect of such provisions. Those provisions are certainly free from all ambiguity. The language is plain, simple, direct, and commanding. It expressly prohibits the legislature from enacting any special law for the amendment of the charter of any city, and provides that such charters shall only be amended by "general laws,"

which "shall be uniform in their operation throughout the state." The amendment of the general act of 1889 found in sec. 72, ch. 312, Laws of 1893, and quoted above, and then continued with an additional amendment by sec. 1, ch. 320, Laws of 1895, above referred to, is not a law going into effect in cities organized and still existing under special charters, merely by virtue of its enactment by the legislature, but is, at most, an authority or power granted to cities existing under such special charters, whereby each such city was at liberty, if it so desired, to amend its own special charter by adopting "the provisions of any special chapter, *section or subdivision of any section*," of the general charter act as so amended, and might "exercise any power or franchise" thereby conferred upon cities organized under the general charter act, "in addition to, or in lieu of, the provisions of its special charter." As indicated, the general charter act contains 269 sections, and has been in force for nearly eleven years, and the constitutional amendment in question has been in force for more than seven years; and yet it is said by those in a position to know that there are eighty-nine cities still existing under such special charters. If each city so under a special charter is thus at liberty to amend its charter, then it is very obvious that no additional cities will adopt the general charter, since the same section giving such power of amendment also provides that no such city shall be deemed to have surrendered its special charter and organized under the general charter act "until it shall have adopted *all its provisions in full*," as thereinbefore provided; that is to say, such special charter will continue so long as there is a section or part of a section of the general charter act which it has failed to adopt. Had such authority to adopt been confined to "any special chapter" of the general charter act, there would have been more force in the contention, but it extends to any "section or subdivision of any section" of that act. In the case at bar the common council of the city

of *Beloit*, existing under a special charter, only attempted to adopt a few fragmentary portions of the chapter on "city improvements" contained in the general charter act. As indicated, it is settled by the adjudications cited, as well as the constitutional provisions in question, that the legislature had no power to amend the charter of any city, except by general laws which should "be uniform in their operation throughout the state," and that there could be no such general law unless it operated alike in all the cities of the state, or at least in all of any class of cities in the state.

The question recurs whether the legislature had power to thus authorize the common council of each of the eighty-nine cities under special charter to do what it could not itself do. Of course, such amendment of the special charter of *Beloit* could only be operative in *Beloit*, and could not be operative in any other city,— much less, uniform in its operation throughout the state. The same is true of any amendment of its special charter by any other of such cities. That the legislature could not thus authorize the common council of each city existing under a special charter to do what it was thus expressly prohibited from doing, would seem to be axiomatic. If any authority is deemed necessary, reference is made to *Chicago & N. W. R. Co. v. Forest Co.* 95 Wis. 85, and the authorities there cited by Mr. Justice PINNEY, and quoted above. It is true, the legislature may rightfully authorize the common council of a city to accept or reject an enactment completely framed by the legislature itself. So, where certain powers are expressly granted to a common council, they may, within the scope of the powers so granted, enact by-laws and ordinances. But here the attempt is to delegate to the common council of each of such several cities so existing under such special charters the *discretionary* power, within the limits mentioned, to amend its own charter as such common council may see fit, by adding to its special charter any "section or subdivision of any section"

of such general charter act, or by adopting the same "in lieu of the provisions of its special charter;" that is to say, such common council may repeal a portion of the special charter of their city, and in lieu thereof may select such sections and subdivisions of sections from the general charter act as they may see fit, and frame them into a composite amendment of the charter. That certainly would be a new creation, and if permissible, and related to a machine, would be patentable. In my judgment, the legislature can delegate to such common council no such discretionary authority, and this statement is, I think, supported by the adjudications of this court. *State ex rel. Att'y Gen. v. O'Neill*, 24 Wis. 149; *Slinger v. Henneman*, 38 Wis. 505; *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 69, 70, 74. Thus, in the second of these cases it was held that "the legislative power vested by the constitution in the senate and assembly cannot be delegated to any other body, although, in matters purely local and municipal, the legislature may enact conditional laws, and permit the people or proper municipal authorities to decide whether such laws shall have force in their respective municipalities." So, in the last of these cases, Mr. Justice PINNEY, in part quoting from adjudications in other states, said: "'The legislature cannot delegate its power to make a law, but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action to depend.'" 92 Wis. 69. "'The true distinction is between the delegation of power to make the law, which necessarily involves a *discretion* as to what it shall be, and conferring authority or discretion as to its execution, to be exercised under and in pursuance of the law. The first cannot be done. To the latter no valid objection can be made.'" 92 Wis. 70. "The result of all the cases on this subject is that a law must be *complete*, in all its terms and provisions, when it leaves the legislative branch of the government, and nothing must be left to the judgment of

the electors or other appointee or delegate of the legislature, so that, in form and substance, it is a law in all its details *in præsenti*, but which may be left to take effect *in futuro*, if necessary, upon the ascertainment of any prescribed fact or event." 92 Wis. 74. In this last case the first standard insurance policy in this state was held void because the legislature attempted to delegate to the insurance commissioner power to fill in certain quite obvious blanks. The ordinance in question was not complete when it came from the legislature. It was certainly unsorted, unset, and unframed. That was done afterwards by the common council. As a whole it was never before, much less considered by, the legislature. The attempt of the legislature to clothe each of the eighty-nine cities under special charters with power, within the limits mentioned, to amend its own charter in the manner indicated, was, in my judgment, in direct violation of the constitutional provisions quoted. Those provisions are, to my mind, clear, plain, and unmistakable. There is no room for construction. To me they are imperative mandates. In my judgment, the legislature had no power to delegate to each of such cities power to amend its charter in the manner indicated,— much less, to authorize such cities to do what the legislature itself was expressly prohibited from doing.