DALLMAN and others, Respondents, vs. CLASEN and others, Appellants, and ROCKWELL MANUFACTURING COMPANY and others, Respondents.

*December 1—December 16, 1902.*

*Mechanics' liens: Subcontractor of subcontractor: Conspiracy to defraud: Evidence.*

1. Secs. 3314, 3315, Stats. 1898, give a mechanic's lien to principal contractors, subcontractors, material men and laborers, but not to a subcontractor of a subcontractor. The owner of land contracted with M. to build a building thereon for $1,000. M. sublet the entire contract to L. for $1,000, and L. sublet different parts of the work to various parties, who sought to establish

their liens on the theory that the subletting to L. was fraudulent, and for the express purpose of placing them in the relation of subcontractors of a subcontractor. *Held*, that even if by reason of a conspiracy it could be held in equity that L. was in fact the principal contractor (a proposition not decided), participation of the owner in the conspiracy is absolutely essential to bind him.

2. In such case the fact that the owner knew that L., instead of M., was in fact erecting the building, is entirely consistent with good faith, and would not support a finding of conspiracy based on that fact alone.

3. In such case proof that L. made his bid with but an hour's deliberation does not justify the conclusion of fraud in the contract.

APPEAL from a judgment of the circuit court for Milwaukee county: LAWRENCE W. HALSEY, Circuit Judge. *Reversed.*

This was a consolidated action brought for the foreclosure of mechanics' liens in favor of alleged subcontractors. The facts, as shown by the evidence, are in brief that on July 27, 1900, the appellant *Clasen,* who owned a building lot in the city of Milwaukee, made a written contract with the appellant *Mindeman,* wherein *Mindeman* agreed to build a house upon *Clasen's* lot, and furnish all material therefor, for the sum of $1,000; that upon the following day *Mindeman* sublet the contract to the defendant *John Lavies,* who by written contract agreed with *Mindeman* to construct the building, and furnish all material and labor therefor, for the sum of $1,000; that thereafter *Lavies* made written contracts with the lien claimants herein to furnish material and labor in the construction of the house as follows: With *Dallman & Dallman,* for mason work and material, $280; with *Wolffersdorf,* for painting, $97; with *Porman,* for plastering, $75; with the *Rockwell Manufacturing Company,* for millwork, $225; with *Geskerman,* for tinwork, etc., $53.48; that the house was completed, and the contracts made by the lien claimants with *Lavies* fully performed, and that after such performance *Lavies* gave orders to the aforesaid lien claim-

ants, addressed to *Mindeman,* and directing him to pay the lien claimants the respective amounts due them, and such orders were all specified upon their faces to be in full payment of the claims for which they were given; that *Mindeman* refused to pay the orders; that *Clasen* paid the full contract price of the house to *Mindeman,* the last payment being made February 2, 1901; that *Mindeman* paid *Lavies* the entire contract price before the commencement of this action, but that *Lavies* never paid any of the lien claims; that notices of subcontractors' liens were served in due time, and lien claims were properly filed by all of the claimants. The plaintiffs, by their complaint, claimed that the contract between *Mindeman* and *Lavies* was simply a fraudulent attempt to deprive the plaintiffs of their pay and of their right to mechanics' liens. This claim of fraud was denied by the defendants. The action was tried before a referee, who found that the lien claimants were entitled to liens upon the property; and the report was confirmed, and personal judgment rendered in favor of the claimants against *Clasen* and his wife, *Mindeman,* and *Lavies,* as well as judgment of foreclosure of liens upon the real estate. From this judgment the defendants *Clasen* and *Mindeman* appeal.

*Charles J. Weaver,* for the appellants.

For the respondents there were separate briefs by *A. J. Eimermann,* for the plaintiff respondents, *John H. Moss,* attorney, and *Winkler, Flanders, Smith, Bottum & Vilas,* of counsel, for the respondent *Rockwell Manufacturing Company,* and *Edgar L. Wood,* for the respondents *Geskerman,* and oral argument by *Mr. Eimermann* and *Mr. E. P. Vilas.*

WINSLOW, J. Our mechanic's lien statute gives the right of lien to principal contractors, subcontractors, and the employees of either, but not to a subcontractor of a subcontractor. Stats. 1898, secs. 3314, 3315. In the present case the lien claimants and respondents were apparently subcon-

tractors of a subcontractor, and hence not entitled to liens, and the simple question to be determined is whether any facts appear in the case which in equity entitle them to be treated as subcontractors. The referee found as facts that the contract by which *Mindeman* sublet the entire work to *Lavies* was made by *Mindeman* and *Lavies* with the intent of obtaining from the lien claimants their labor· and materials without payment, and depriving them of their rights of lien; that *Clasen,* the owner, saw and knew that *Lavies* was erecting the building, instead of *Mindeman;* and, as a conclusion of law, that *Lavies* became, in equity and essentially, the principal contractor for the building, instead of *Mindeman,* and that the lien claimants thus became subcontractors, and entitled to liens. It may well be that, had there been a conspiracy formed, to which *Clasen, Mindeman,* and *Lavies* were parties, that the building contract was to be nominally let to *Mindeman,* and that *Lavies* was then immediately to take the contract for the purpose of defeating liens of materialmen by thus making them subcontractors of a subcontractor, a court of equity would rightfully hold that *Lavies* was in fact the principal contractor, and hence that the lien claimants were subcontractors, although this proposition is not decided. Conceding it to be correct, however, it is clear that the participation of *Clasen,* the owner, in the conspiracy, must be absolutely essential. He cannot be prejudiced, nor his land saddled with a lien, by the acts of third parties in which he did not join. This seems fundamental and elementary. It is not found that *Clasen* had any knowledge of or participation in the arrangements between *Mindeman* and *Lavies,* nor is there any evidence of such knowledge or participation. He knew that *Lavies* was in fact erecting the building, but this is entirely consistent with good faith on the part of *Clasen.* No finding of fraud or conspiracy can be based on this fact alone. So far, therefore, as *Clasen* is concerned, there is absolutely no evidence tending to show that the lien

claimants are entitled to be considered as anything more than subcontractors of a subcontractor.

As to the personal judgment against *Mindeman,* it must be based upon the supposed fraudulent character of the subcontract between *Mindeman* and *Lavies,* if upon anything. Really the only proof that this was not a *bona fide* contract was the fact that *Lavies* made his bid with but about an hour's deliberation. It was, however, a very small house, as appears from the price, and hence one upon which a competent builder might make estimates in a very brief time. Fraud should be clearly and satisfactorily proven. We have been unable to find any evidence which would justify the conclusion of fraud in this contract.

*By the Court.*—Judgment reversed as to the appealing defendants, and action remanded, with directions to dismiss the complaint as to such defendants.