146    SUPREME COURT OF WISCONSIN.    [June

M., St. P. & S. S. M. R. Co. v. Railroad Commission, 136 Wis. 146.

MINNEAPOLIS, ST. PAUL & SAULT STE. MARIE RAILWAY
COMPANY, Appellant, vs. RAILROAD COMMISSION OF
WISCONSIN, Respondent.

*May 16—June 5, 1908.*

*Railroad Commission: Powers: Interference by courts: Constitutional
law: Powers of legislature: Delegation: Ascertainment of facts:
Regulation of railroad rates or service: Fixing "reasonable"
rates, etc.: Review by courts: "Unlawful or unreasonable" or-
ders: "Clear and satisfactory evidence:" Railroad stations: Dis-
tance apart: Stopping of trains.*

1. The Railroad Commission created by ch. 362, Laws of 1905, was
intended by the legislature to be a tribunal of great dignity and
responsibility having to deal with vast interests and compli-
cated legal and economic questions, and was given powers ap-
propriate to the discharge of these duties.

2. Unless clearly required to do so the circuit court should not in-
terfere with the determinations or orders of the Railroad Com-
mission.

3. If the orders and rules of the Railroad Commission were wholly
legislative in their nature the legislature could not delegate to
the Commission power to make such rules and orders.

4. Neither could power be conferred upon courts by mere statute
to review and set aside as unreasonable acts of the legislature
not in conflict with the state or federal constitution or with
some paramount federal law.

5. It is impossible under our system of government to fix and main-
tain efficiently a system of just and reasonable regulation of
railroad rates and service by direct action of the legislature
specifying rates and details of service.

6. The authority of the state to exercise the just and ordinary pow-
ers usually possessed by governments (among which is the
regulation of rates and services of railroad carriers) is not to
be restricted by mere implication from the expressed provisions
of the state constitution.

7. Without any specific enabling provisions in the constitution the
legislature of this state may make all laws necessary and proper
for carrying into execution the powers which that instrument
vests in the state government or in any department or officer
thereof.

8. In the usual process of enacting a law there is frequently neces-
sary the preliminary determination of a fact or group of facts
by the legislature.

M., St. P. & S. S. M. R. Co. v. Railroad Commission, 136 Wis. 146.

9. The legislature may delegate such power not legislative in its nature as it has itself authority to exercise.

10. The legislature may create a *quasi*-judicial tribunal and delegate to that tribunal the power which the legislature possesses to ascertain, determine, and declare facts, whether such determination precedes or follows the enactment of the general legal rule.

11. In a case in which its power of regulation cannot otherwise be justly or efficiently exercised the legislature has power to declare a general rule of law applicable to conditions of fact described by that law in general terms but not precisely ascertained, such law to take effect upon all specific cases within that general rule only when the existence of such conditions of fact is ascertained and established by subsequent determination of a judicial or *quasi*-judicial tribunal.

12. Likewise a general rule of law may be enacted to take effect and be in force upon the subsequent establishment of certain facts or conditions; and the nature of the contingency in which the law is to go into effect is not material if such contingency be fairly connected with the object and purposes of the statute and reasonably certain.

13. A statute declaring that railroad rates and service shall be reasonable, creating a commission with power to investigate existing rates and service and to fix and determine what rates and what service are reasonable, and providing that the rates and service so fixed shall be in force, is a valid exercise of the legislative power.

14. The legislature may in such case, instead of making the law wholly conditional and contingent upon the ascertainment and declaration of reasonable rates or service by the commission, add the further contingency that the order of the commission fixing the rate or service be subject to review by the courts and upheld by the courts as not unreasonable.

15. Neither the commission nor the courts can, however, be vested with discretion to determine whether the precedent law shall or shall not go into effect in particular cases.

16. Ch. 362, Laws of 1905, assumes and declares the existence of a railroad rate, charge, classification, or service which is exactly reasonable and just, applicable to every special instance or condition, and discoverable by investigation, and commits to the Railroad Commission the duty to ascertain and disclose that rate, classification, or service, and when so ascertained and disclosed the mandate of the statute that rates, fares, charges, classifications, and joint rates fixed by the Commission shall be in force and *prima facie* reasonable, declares an ancillary

148    SUPREME COURT OF WISCONSIN. [June

M., St. P. & S. S. M. R. Co. v. Railroad Commission, 136 Wis. 146.

rule of law to take effect in the particular instances investi-
gated by the Commission, contingent upon the ascertainment
and promulgation by the Commission of what is reasonable in
the particular instance or under the particular conditions un-
der investigation. The Commission is not given power or dis-
cretion to fix one of several rates either of which would be just
and reasonable, and hence there is no delegation of purely legis-
lative power.

17. The function of the courts, under said ch. 362, Laws of 1905, in
reviewing an order of the Railroad Commission is not to deter-
mine whether the rate or service fixed by it is just and reason-
able, but to determine whether the *order* is unreasonable or un-
lawful. If the order is found by the court to be such that rea-
sonable men might well differ as to its correctness, it cannot
be said to be unreasonable.

18. In such review the courts are required to exercise no legislative
power, to ascertain and disclose no rates, to declare no rule or
law unreasonable, but merely to exercise judicial power in de-
termining whether or not the order of the Commission was un-
reasonable and to set it aside if so found, leaving the Commis-
sion free to make further investigation and take further action;
and the conferring of such authority upon the courts is within
the legislative power.

19. In the provision in sec. 16, ch. 362, Laws of 1905, that in an ac-
tion to set aside an order of the Railroad Commission the bur-
den of proof is upon the plaintiff to show by clear and satisfac-
tory evidence that the order is unlawful or unreasonable, the
words "clear and satisfactory" are intended to describe a de-
gree of proof greater than a preponderance of evidence and
such as is necessary to establish fraud or prove mistake in a
written instrument.

20. Considering the degree of proof required in such an action, the
viewpoint of the investigation by the court, and that the court
is dealing with a question of fact or a mixed question of fact
and law, great weight will necessarily be given to the order of
the Commission and a very strong case must be made to estab-
lish its unreasonableness.

21. An order of the Commission need not be confiscatory in its char-
acter and effect in order to be unlawful or unreasonable within
the meaning of the statute.

22. What distinction there is between the terms "unreasonable" and
"unlawful" as used in the statute, is not here determined.

23. In this case an order of the Railroad Commission requiring the
erection of a platform and the stopping of certain local passen-
ger trains at a point about midway between stations 7.8 miles
apart, is *held* not to have been shown to be unreasonable, al-

though this court would not have made the order had it been sitting as a commission.

MARSHALL and BASHFORD, JJ., concurring in the decision, are of the opinion:

1. In every hearing before the Railroad Commission on complaint the initial and jurisdictional question is whether, in the given case, the conduct of the railroad company is unreasonable; and such jurisdictional fact should be shown affirmatively to have been found.

2. The reasonable service or rate which the Commission is empowered to fix and order substituted for the service or rate complained of is in each case the minimum service or the maximum rate which is reasonable.

3. A full judicial review of the action of the Commission is contemplated, the circuit court to try questions of law and fact the same as the Commission, giving such weight, however, to the decision of the latter on all matters of fact that it shall stand unless shown to be wrong by clear and satisfactory evidence; and, in case of an appeal to the supreme court, the scope of review to be the same as in case of any appeal from a judgment in an action tried by the court.

DODGE, J., dissenting from the decision on the ground that the service in question, rendered by the railroad company at the time of the complaint to the Commission, was not shown to have been other than reasonably adequate, is of the opinion:

1. The Commission is empowered first to determine whether a rate or service complained of is unreasonable, and not until or unless that fact is established is any further action by the Commission authorized.

2. After finding that the rate or service complained of is unreasonable, it becomes the duty of the Commission to ascertain and declare *the* reasonable rate or service, which is the maximum rate or minimum service consistent with reason.

3. The selection and fixing of any other than such maximum rate or minimum service would necessarily involve, not merely the ascertainment of a fact or condition, but also the exercise of choice or discretion based on considerations of policy or expediency. The power to exercise such choice is purely legislative and cannot be delegated.

4. In reviewing an order of the Commission requiring certain service from a railroad company the court must assume that the Commission thereby fixed the minimum service which in its opinion would be reasonable, and if the court finds, after consideration of the evidence, giving due weight to the decision of the Commission, that a less service would be within the field of reason, the order should be held unlawful because an erroneous decision of a concrete question of fact.

150    SUPREME COURT OF WISCONSIN.    [June

M., St. P. & S. S. M. R. Co. v. Railroad Commission, 136 Wis. 146.

APPEAL from a judgment of the circuit court for Dane county : E. RAY STEVENS, Circuit Judge. *Affirmed.*

The cause was argued and submitted on February 3, 1908.

For the appellant there was a brief by *Alfred H. Bright,* and a reply brief by *Sanborn & Blake,* attorneys, and *Alfred H. Bright,* of counsel, and oral argument by *Mr. Bright* and *Mr. J. B. Sanborn.*

For the respondent there was a brief by the *Attorney. General* and *A. C. Titus,* first assistant attorney general, and oral argument by *Russell Jackson,* deputy attorney general.

On March 10, 1908, the following *per curiam* order was made :

"Ordered, that this cause be placed at the foot of the assignment of cases for April 21, 1908, and be reargued upon the following questions :

"(1) What is the scope of review by the courts of the orders of the Railroad Commission of Wisconsin contemplated in the action provided for by sec. 16, ch. 362, Laws of 1905 ?

"(2) Is it within the legislative power to confer upon courts authority to review the reasonableness of rules or orders of the Railroad Commission ?

"(3) What is the true construction of the word 'unreasonable' in said section ?

"Ordered, further, that the clerk of this court transmit a copy of this order to the attorney general and to each of the resident counsel of the principal lines of railroad, who are hereby invited to participate in said reargument and to serve and file briefs."

Pursuant to such order the cause was reargued on May 16, 1908.

*John B. Sanborn,* attorney, and *A. H. Bright,* of counsel, for the appellant, cited sec. 1801, Stats. (1898) ; *Railroad Comm'rs v. Missouri Pacific R. Co.* 71 Kan. 193, 80 Pac. 53 ; *Morgan's La. & T. R. & S. S. Co. v. Railroad Comm.* 109 La. 247, 33 South. 214 ; *Railroad Comm. v. K. C. S.*

*R. Co.* 111 La. 133, 35 South. 487; *State ex rel. Railroad & W. Comm'rs v. M. & St. L. R. Co.* 76 Minn. 469, 79 N. W. 510; *State ex rel. Railroad & W. Comm'rs v. N. P. R. Co.* 90 Minn. 277, 96 N. W. 81; *State v. N. P. R. Co.* 89 Minn. 367, 95 N. W. 297; *Miss. R. R. Comm. v. Ill. Cent. R. Co.* 203 U. S. 335, 27 Sup. Ct. 90; *Railroad Comm. Cases,* 116 U. S. 307, 6 Sup. Ct. 334, 388, 1191; *Dow v. Beidelman,* 125 U. S. 680, 8 Sup. Ct. 1028; *St. Louis & S. F. R. Co. v. Gill,* 156 U. S. 649, 15 Sup. Ct. 484; *Louisville & N. R. Co. v. Kentucky,* 183 U. S. 503, 22 Sup. Ct. 95; *Minneapolis & St. L. R. Co. v. Minnesota,* 186 U. S. 257, 22 Sup. Ct. 900; *Budd v. New York,* 143 U. S. 517, 12 Sup. Ct. 468; *Chicago & G. T. R. Co. v. Wellman,* 143 U. S. 339, 12 Sup. Ct. 400; *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362, 14 Sup. Ct. 1047; *Smyth v. Ames,* 169 U. S. 466, 18 Sup. Ct. 418; *Pennsylvania R. Co. v. Philadelphia Co.* 220 Pa. St. 100, 68 Atl. 676; *Chicago, B. & Q. R. Co. v. Jones,* 149 Ill. 361, 37 N. E. 247; *Burlington, C. R. & N. R. Co. v. Dey,* 82 Iowa, 312, 48 N. W. 98; *Chicago & N. W. R. Co. v. Dey,* 35 Fed. 866; *State v. D. M. & K. C. R. Co.* 87 Iowa, 644, 54 N. W. 461; *Storrs v. P. & A. R. Co.* 29 Fla. 617, 11 South. 226; *State v. Ala. & V. R. Co.* 68 Miss. 653, 9 South. 469; *People ex rel. Loughran v. Railroad Comm'rs,* 158 N. Y. 421, 53 N. E. 163; *People ex rel. Steward v. Railroad Comm'rs,* 160 N. Y. 202, 54 N. E. 697; *Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Comm.* 162 U. S. 184, 16 Sup. Ct. 700; *Texas & P. R. Co. v. Interstate Commerce Comm.* 162 U. S. 197, 16 Sup. Ct. 666; *Interstate Commerce Comm. v. Ala. M. R. Co.* 168 U. S. 144, 18 Sup. Ct. 45; *Interstate Commerce Comm. v. C. G. W. R. Co.* 141 Fed. 1003; *Steenerson v. G. N. R. Co.* 60 Minn. 461, 62 N. W. 826; *Jacobson v. Wis., M. & P. R. Co.* 71 Minn. 519, 74 N. W. 893; *State ex rel. Railroad & W. Comm. v. W. & S. F. R. Co.* 88 Minn. 448, 93 N. W. 112; *State ex rel. Railroad & W. Comm'rs v. M. & St. L. R. Co.*

76 Minn. 469, 79 N. W. 510; *Chicago, I. & L. R. Co. v. Railroad Comm.* 38 Ind. App. 439, 78 N. E. 338; *Railroad Comm. v. H. & T. C. R. Co.* 90 Tex. 340, 38 S. W. 750; *Railroad Comm. v. Weld,* 96 Tex. 394, 73 S. W. 529; *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. E. 738; *In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347; *Madison v. Madison G. & E. Co.* 129 Wis. 249, 268, 108 N. W. 65; *Atl. C. L. R. Co. v. N. C. Corp. Comm.* 206 U. S. 1, 27 Sup. Ct. 585; *Ill. Cent. R. Co. v. Interstate Commerce Comm.* 206 U. S. 441, 27 Sup. Ct. 700; *Plott v. C. & N. W. R. Co.* 63 Wis. 511, 23 N. W. 412; *Chicago & N. W. R. Co. v. State ex rel. Carr,* 74 Neb. 77, 103 N. W. 1087; *Northern Pac. R. Co. v. Terr. ex rel. Dustin,* 142 U. S. 492, 12 Sup. Ct. 283; *In re Griner,* 16 Wis. 423; *State ex rel. Moreland v. Whitford,* 54 Wis. 150, 11 N. W. 424; *Nash v. Fries,* 129 Wis. 120, 108 N. W. 210; *State ex rel. Milwaukee Med. Coll. v. Chittenden,* 127 Wis. 468, 107 N. W. 500; *In re Linden,* 112 Wis. 523, 88 N. W. 645; *State ex rel. Boycott v. Mayor,* 107 Wis. 654, 84 N. W. 242; *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *State v. Redmon,* 134 Wis. 89, 114 N. W. 137; *Le Feber v. West Allis,* 119 Wis. 608, 97 N. W. 203; *Tilly v. Mitchell & L. Co.* 121 Wis. 1, 98 N. W. 969; *State v. Houser,* 122 Wis. 534, 100 N. W. 964; *Interstate Commerce Comm. v. C. G. W. R. Co.* 209 U. S. 108, 28 Sup. Ct. 493; *Platt v. Lecocq,* 158 Fed. 723.

For the respondent there was a brief by the *Attorney General* and *Russell Jackson,* deputy attorney general, and *Olin & Butler,* of counsel, and oral argument by the *Attorney General* and *H. L. Butler.*

The respondent, in addition to many of the above cases, cited *State ex rel. Gubbins v. Anson,* 132 Wis. 461, 112 N. W. 475; *Trustees v. Saratoga G., E. L. & P. Co.* 191 N. Y. 123, 83 N. E. 693; *Eastern Wis. R. & L. Co. v. Hackett,* 135 Wis. 464, 115 N. W. 376; *Granger Cases,* 94 U. S.

155–181; *Att'y Gen. v. Railroad Cos.* 35 Wis. 425; *State ex rel. Augusta v. Losby,* 115 Wis. 57, 90 N. W. 188; *State ex rel. N. C. Foster L. Co. v. Williams,* 123 Wis. 61, 100 N. W. 1048; *U. S. ex rel. Riverside Oil Co. v. Hitchcock,* 190 U. S. 316, 23 Sup. Ct. 689; *Bates & Guild Co. v. Payne,* 194 U. S. 106, 24 Sup. Ct. 595; *San Diego L. & T. Co. v. National City,* 174 U. S. 739, 19 Sup. Ct. 804; *San Diego L. & T. Co. v. Jasper,* 189 U. S. 439, 23 Sup. Ct. 571; *Chicago, M. & St. P. R. Co. v. Minnesota,* 134 U. S. 418, 10 Sup. Ct. 462; *Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Comm.* 162 U. S. 184, 16 Sup. Ct. 700; *Texas & Pac. R. Co. v. Abilene C. O. Co.* 204 U. S. 426, 27 Sup. Ct. 350; *Steenerson v. G. N. R. Co.* 69 Minn. 353, 72 N. W. 713; *In re Auburn & W. R. Co.* 37 App. Div. 162, 55 N. Y. Supp. 895; *People ex rel. Terminal R. Co. v. Railroad Comm'rs,* 53 App. Div. 61, 65 N. Y. Supp. 597; *Cedar Rapids W. Co. v. Cedar Rapids,* 118 Iowa, 234, 91 N. W. 1081; *Atlantic Coast Line v. Wharton,* 207 U. S. 328, 28 Sup. Ct. 121; and other cases.

In response to the invitation of the court there were briefs by *Edward M. Hyzer, C. H. Van Alstine,* and *Miller, Mack & Fairchild,* and oral argument by *Mr. Hyzer* and *Mr. Van Alstine.*

TIMLIN, J.   On September 15, 1906, the Railroad Commission of Wisconsin, upon complaint made by and in behalf of a number of persons residing in the town of Garfield, Polk county, and after hearing said complainants and the railway company, made an order that the *Minneapolis, St. Paul & Sault Ste. Marie Railway Company* erect and construct at a point on its line between the stations of Nye and Deronda, which point was formerly known as Dwight's Siding or Spur, a platform suitable for the loading and unloading of cream and other merchandise shipped by express; that such platform should be constructed so as to be accessible to

teams, and of the kind and dimensions usually and customarily furnished at small stations where no depot is maintained, and should be sufficient to enable passengers to get on and off trains with safety. The railway company was further ordered to stop its local passenger trains numbered 84 and 85, as shown on its time-card of August 10, 1906, at the point above designated for the purpose of receiving and discharging passengers and express packages. Except in the season during which cream is shipped, the trains are required to stop only upon signal or request by prospective or actual passengers. According to appellant's time-card of August 10, 1906, Nye is 61.8 miles and Deronda 69.6 miles eastwardly from Minneapolis, and each about ten miles nearer to St. Paul. Local passenger train No. 84, east bound, arrives at Nye at 10:54 a. m. and at Deronda at 11:10 a. m., daily except Sunday. Local passenger train No. 85, west bound, arrives at Deronda at 2:47 p. m. and at Nye at 3:06 p. m., daily except Sunday. Nye and Deronda are 7.8 miles apart. The new stopping place, called Dwight, is about midway between the stations and in or about the center of an agricultural and dairying community consisting of sixty-four families of 294 persons, and this area, two by three miles in extent, is naturally tributary to Dwight for railroad purposes. The probable contribution to railroad traffic from Dwight will be six cans of cream daily in summer and three cans three times a week in winter, together with some shipments of butter and eggs and an occasional passenger, all of which would at current rates pay the railroad company a small profit over and above the expense caused by this extra stop at Dwight. There are five flag stations in the first 114 miles eastwardly from Minneapolis at which trains numbered 84 and 85 stop. These trains carry no freight, but do carry express packages in a sort of combination car. The railway company formerly maintained a spur at Dwight. The order does not prevent the trains numbered 84 and 85 from making their ordinary and

usual connections, and the stop is attended with no danger on account of the proximity of the trains in question to other trains on the same road at that hour.   There is a good road from Dwight to Deronda, where there is a small village or hamlet.   At Dwight there is a general store, a church, and a schoolhouse.   There are other evidential matters, but the foregoing are the principal facts.

The railway company brought an action under sec. 16, ch. 362, Laws of 1905, in the circuit court for Dane county against the Railroad Commission to vacate and set aside the order in question, and after trial and hearing the circuit court made findings of fact and conclusions of law to the effect that the order of the Commission was not unreasonable, and rendered judgment refusing to vacate this order.   This court is asked to review and reverse on its merits the judgment of the circuit court.   After the case was presented to this court upon briefs and arguments on January 28, 1908, a reargument was ordered.   The following questions, but in different order, were suggested for reargument:

(1) Is it within the legislative power to confer upon courts authority to review the reasonableness of rules or orders of the Railroad Commission?

(2) What is the scope of review by courts of the orders of the Railroad Commission of Wisconsin contemplated in the action provided for by sec. 16, ch. 362, Laws of 1905?

(3) What is the true construction of the word "unreasonable" in that section?

The able counsel who presented the case on the first argument have been assisted upon the reargument by other able and distinguished members of the bar, and we gratefully acknowledge that the thorough presentation of the questions involved from varying viewpoints and with much legal learning and acumen has been of great service to this court.   We have also given the subject painstaking investigation and careful consideration.

Ch. 362, Laws of 1905, is the first attempt in this state to

156    SUPREME COURT OF WISCONSIN.    [June

M., St. P. & S. S. M. R. Co. v. Railroad Commission, 136 Wis. 146.

regulate the rates and service of railroads by or through a commission, although much experimental legislation of this kind has come into existence by the enactment of federal statutes and by the enactment of statutes and the adoption and amendment of constitutions in many of the states during the last twenty-one years. The exact legal relation of the railroad to the state and its citizens presents many grave and difficult legal problems. It was unknown to the ancient jurists. Restrictions of written constitutions and of our dual system of federal and state control of commerce, the vastness of the interests affected, the multitude of detail, and the many-sided legal and economic nature of the questions ordinarily presented, are responsible for much of this difficulty; the extraordinary development of the carrying trade in modern times for more. Consequently the law on this subject, statute and unwritten, is more or less in a state of transition at the present time.

After creating the Commission, to consist of three persons, one of whom shall have a general knowledge of railroad law and the others a general understanding of matters relating to railroad transportation, it is provided that such officers shall be and remain disinterested upon pain of forfeiture of office, and that no member of the Commission shall hold any other office or any position of profit or pursue any other business, but shall devote his whole time to the duties of his office. These qualifications required for the office and these safeguards to insure the impartial exercise of its functions and the great power vested in the Commission by this act and by later statutes evince an intention of the legislature to create an office of great dignity and great responsibility. The Commission has the charge and determination of interests vast in amount, delicate and complicated in their legal and economic relations, affecting the happiness and prosperity of all the people of the state, and involving the consideration and protection of private rights of the most sacred

character.   Experience tends to show that public officers, as well as private citizens, are apt to rise in character and dignity to meet great responsibilities, but to shift responsibility where opportunity of shifting is easily afforded and thereby to deteriorate in efficiency and in character.   Besides this, the work of the Commission requires much expert knowledge of the difficult subject of transportation and rates, the consideration and application of economic as well as legal principles, and an intimacy with local and state traffic conditions.   Consequently, unless required to do so by the mandate of law, the circuit courts should interfere as little as they may with the determinations and the work of the Railroad Commission.   But courts, too, are bounden to duty, and cannot throw off at will that which is imposed upon them by law fairly construed and properly understood.

The statute in question defines the term "railroad" as used therein, and provides that every railroad is required to furnish reasonably adequate service and facilities, and that the charges made for any service rendered or to be rendered in the transportation of passengers or property, or for any service in connection therewith, or for the receiving, switching, delivering, storing, or handling of such property, shall be reasonable and just, and every unjust or unreasonable charge for such service is prohibited and declared to be unlawful.   In the absence of any action by the Railroad Commission the railroad may fix rates, but not above the maximum therein provided.   Upon complaint of any person or on its own initiative the Railroad Commission may proceed to hear and investigate, and if it be found that the rate or rates, fares, charges, or classifications, or any joint rate, or any regulation, practice, or service, be unreasonable, or unjustly discriminatory, or the service be found inadequate, the Railroad Commission shall have power to fix and order substituted therefor such rate or rates, fares, charges, or classifications as it shall have determined to be just and reason-

able, which shall be charged, imposed, and followed in the future, and shall also have power to make such orders respecting such regulation, practice, or service as it shall have determined to be reasonable, which shall be observed and followed in the future (secs. 12 and 14). All rates, fares, charges, classifications, and joint rates fixed by the Commission shall be in force and shall be *prima facie* reasonable until finally found otherwise as therein provided. Sec. 16 of the act in question permits the railroad or any other party in interest to obtain a review of the orders of the Commission by bringing an action in the proper circuit court against the Commission to vacate and set aside its order on the ground that the rate or rates, fares, charges, classification, or joint rates fixed by such order are unlawful, or that any regulation, practice, or service fixed by such order is unreasonable. This action is to be tried and determined like other civil actions, except that, if new evidence is introduced at such trial, the circuit court, unless the parties stipulate otherwise, must remand the cause back to the Railroad Commission for further action. Either party may appeal from the judgment of the circuit court to the supreme court. The act also provides:

"In all trials under this section the burden of proof shall be upon the plaintiff to show by clear and satisfactory evidence that the order of the Commission complained of is unlawful or unreasonable, as the case may be."

Other provisions of the act need not be noticed here, except to say that the Commission is given power by subd. "a" of sec. 14, after hearing, to rescind, alter, or amend any of its orders, and by sec. 28 to fix emergency rates and suspend existing rates.

Whether it is within the power of the legislature to confer upon courts authority to review the reasonableness of rules or orders of the Railroad Commission depends upon the fun-

damental nature of these rules or orders.    If such rules and'
orders are purely legislative and violate no constitutional
law or paramount federal statute, it would be incorrect to
say that their reasonableness could be the subject of judicial
review, because that would give the judicial branch of gov-
ernment a supervisory control over legislation, largely dis-
cretionary, and limited only by the judicial opinion of what
is reasonable.    It is argued that the power to fix rates is a
legislative power, and can never be anything else whether
the rates are fixed by the legislature or by a commission or
by the action of the legislature and commission jointly; that
the legislative power is by the constitution vested in the sen-
ate and assembly, and cannot be delegated except in instances
expressly provided for in the constitution.    But when we
add to this that because of the multitude of detail, the intri-
cacy of the subject, the expert knowledge required, the nu-
merous separate investigations of interrelated questions of
fact which are necessary, and the necessity for frequent
changes and adjustments in rates or service, a legislative
body, the members of which are chosen for short terms from
the body of the people, would find it an actual rather than a
legal impossibility to fix just and reasonable rates, it be-
comes apparent that this position tends to the conclusion that
by the adoption of its constitution, which vested the whole
legislative power in the senate and assembly and forbade its
delegation, the state was shorn of some of its usual and neces-
sary powers of sovereignty and became impotent to exercise
the power of regulation.    Rate regulation of railroads by
direct action of the legislature has been tried and found im-
practicable and its attempt generally abandoned.    The busi-
ness of the carrier has in these modern times so grown and
expanded and become such a large factor in the complicated
social and economic life of the country that the old modes of
regulation by direct action of the legislative body are no

longer adequate and, indeed, no longer possible. But the old authority and the old principles remain and are not to be abrogated by implication.

It was said in *Railroad Co. v. Peniston,* 18 Wall. 5, 31, speaking of the federal constitution: "Its limitations and its implied prohibitions must not be extended so far as to destroy the necessary power of the states or prevent their efficient exercise." Much less should those state officials upon whom rests the duty of interpreting the state constitution derive from the words of that constitution implications which impair the authority of the state to exercise the just and ordinary powers usually possessed by governments, and which implications would recognize within the state persons or corporations not subject to or capable of ordinary regulation by the state, and presuppose that by the adoption of the constitution the state so manacled itself as to be helpless to exercise old and well-known governmental powers or to apply such powers to new problems or new conditions. Such construction would make the mere implications of the constitution greater than the constitution itself, and would lose sight of the main and paramount purpose of the creation of the state and the adoption of its constitution. A constitution so construed would last only so long as it took to bring about an amendment or a new constitution, made possibly in the heat of conflict, and therefore in all probability less wise and equitable than the old constitution properly construed. This is called by counsel the doctrine of expediency, but we think it the doctrine of common sense that forbids implications from an instrument which tend to render nugatory or to destroy that instrument.

The constitution of the United States gives Congress power to make all laws necessary and proper for carrying into execution the powers by that instrument vested in the government of the United States or in any department or officer thereof. The legislature of the state of Wisconsin

needs no such enabling provision. It possesses that power. But it was said in *Boske v. Comingore,* 177 U. S. 459, 468, 20 Sup. Ct. 705:

"Congress has a large discretion as to the means to be employed in the execution of a power conferred upon it, and is not restricted to 'those alone without which the power would be nugatory;' for 'all means which are appropriate, which are plainly adapted' to the end authorized to be attained, 'which are not prohibited, but consist with the letter and spirit of the constitution, are constitutional.' 'Where the law is not prohibited, and is really calculated to effect any of the objects intrusted to the government, to undertake here to inquire into the degree of its necessity would be to pass the line which circumscribes the judicial department and to tread on legislative ground.' *McCulloch v. Maryland,* 4 Wheat. 316, 415, 421, 423. In the more recent case of *Logan v. U. S.* 144 U. S. 263, 283, 293, 12 Sup. Ct. 622, 626, this court, referring to the above constitutional provision, said that, 'in the exercise of this general power of legislation, Congress may use any means, appearing to it most eligible and appropriate, which are adapted to the end to be accomplished, and are consistent with the letter and spirit of the constitution.' Again: 'Every right created by, arising under, or dependent upon the constitution of the United States may be protected and enforced by Congress by such means and in such manner as Congress, in the exercise of the correlative duty of protection, or of the legislative power conferred upon it by the constitution, may in its discretion deem most eligible and best adapted to attain the object.'"

So statutes declaring that railroad rates and service shall be reasonable, and creating a commission with power to investigate existing rates and service, and to fix and determine what rates and what service are reasonable, the statute then providing that the rates and service so fixed shall be in force, have been generally upheld as a valid exercise of the legislative power. *Railroad Comm. Cases,* 116 U. S. 307, 6 Sup. Ct. 334, 338, 1191; *Reagan v. Farmers' L. & T. Co.* 154 U. S. 362, 14 Sup. Ct. 1047; *Georgia R. Co. v. Smith,*

70 Ga. 694; *Chicago, B. & Q. R. Co. v. Jones,* 149 Ill. 361, 37 N. E. 247; *Hopper v. Chicago, M. & St. P. R. Co.* 91 Iowa, 639, 60 N. W. 487; *State ex rel. Railroad & W. Comm. v. M. & St. L. R. Co.* 80 Minn. 191, 83 N. W. 60; *Railroad Comm. v. H. & T. C. R. Co.* 90 Tex. 340, 38 S. W. 750. The division of governmental powers into executive, legislative, and judicial, while of great importance in the creation or organization of a state and from the viewpoint of institutional law and otherwise, is not an exact classification. No such exact delimitation of governmental powers is possible. In the process of enacting a law there is frequently necessary the preliminary determination of a fact or group of facts by the legislature, and it is well settled that the legislature may declare the general rule of law to be in force and take effect upon the subsequent establishment of the facts necessary to make it operative or to call for its application; as the bankruptcy law of the United States with reference to legislative action regarding exemption laws existing or to be thereafter enacted (*Hanover Nat. Bank v. Moyses,* 186 U. S. 181, 22 Sup. Ct. 857); or the law may be made to take effect conditionally, depending upon the action of the legislature of another state fixing the amount to be exacted (*Phœnix Ins. Co. v. Welch,* 29 Kan. 672; sec. 1221, Stats. 1898, and cases in note); or it may be conditioned upon the legislative act of a city council (*Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869); or upon action of the executive (*In re Griner,* 16 Wis. 423; *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495); or upon judicial action involving the determination of questions of fact (*In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033, and cases cited in opinion; *Nash v. Fries,* 129 Wis. 120, 108 N. W. 210); or upon administrative action (*State ex rel. Adams v. Burdge,* 95 Wis. 390, 70 N. W. 347, and cases cited in opinion); or upon a declaration of fact or the creation of a condition by vote of the electors of a municipality (*State ex rel. Faber v. Hinkel,* 131

Wis. 103, 111 N. W. 217). In short, as said by REDFIELD, C. J., in *State v. Parker,* 26 Vt. 357:

"It makes no essential difference what is the nature of the contingency, so it be an equal and a fair one, a moral and a legal one, not opposed to sound policy, and so far connected with the object and purpose of the statute as not to be a mere idle and arbitrary one."

The legislature may delegate any power not legislative which it may itself rightfully exercise. *Wayman v. Southard,* 10 Wheat. 1. This power to ascertain facts is such a power as may be delegated.

The cases heretofore cited with reference to the constitutionality of laws creating a railroad board or commission and authorizing the latter to ascertain and fix reasonable rates, which rates, thus ascertained, would be thenceforth in force, rest on these rules of law. Consequently there can be no objection if the legislature, instead of making the law wholly conditional and contingent upon the ascertainment and declaration of reasonable rates by the commission, add the further contingency that the investigation and order of the commission be subject to review by the courts, and the rates so fixed by the commission upheld as not unreasonable by judicial determination. But neither the commission nor the court can be vested with discretion to determine whether the precedent law declared by the legislature shall or shall not go into effect in particular cases. *In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738. This law (ch. 362, Laws of 1905) establishes, and thenceforth assumes, the existence of rates, charges, classifications, and services discoverable by investigation, but undisclosed, which are exactly reasonable and just. It commits to the Railroad Commission the duty to ascertain and disclose that particular rate, charge, classification, or service. The law intends that there is only one rate, charge, or service that is reasonable and just. When

the order of the Commission is set aside by the court it is because this reasonable and just rate, charge, classification, or service has not yet been correctly ascertained.   When the order of the Commission has been rescinded or changed by the Commission because of changed conditions it is because there is a new reasonable rate to be ascertained and disclosed applicable to such new conditions and fixed by force of law immediately when the new conditions come into existence. But the theory and the mandate of the law is that this point always exists under any combination of conditions and is always discoverable although not always discovered.   Until it is discovered and made known the former rates and service prevail.   The order of the Commission is *prima facie* evidence that the rate, charge, or service found and fixed by it is the particular rate, charge, or service declared by the legislature in general terms to be lawful and to be in force.   If it were conceded that the Commission had power or discretion to fix one of several rates, either of which would be just and reasonable, it would be hard to say that this was not a delegation of pure legislative power to the Commission. But the theory of this law is to delegate to the Commission the power to ascertain facts and to make mere administrative regulations.

If this court or the circuit court were by the statute in question authorized to investigate the subject anew, to put itself in the place of the Commission and search for this reasonable and just rate, with power to substitute its own judgment of what is reasonable and just for the judgment of the commissioners, the statute might be subject to grave criticism.   But the courts are not by this statute so authorized. The authority given to the circuit court is not to search for or disclose or declare this "reasonable and just" rate or service, but merely to determine whether the order of the Commission is "unreasonable"—quite a different thing.   We think the legislature was within its power in conferring upon

the courts such authority to inquire whether or not the order of the Commission was unreasonable and to vacate the order if so found. In doing so the courts are required to exercise no legislative power, to ascertain and disclose no rates, to declare *no rule or no law* unreasonable, but merely to exercise judicial power to ascertain and determine whether the Commission has so far failed in its search for this lawful, just, and reasonable rate as to have found instead, and declared, that which is unreasonable. The result of the reversal of the order of the Commission is not to establish this fact or ascertain this point of reasonableness, but to leave it undisclosed, leaving the former rates to stand or requiring the commissioners to try over again to find it. In reviewing the order of the Railroad Commission the inquiry is not whether the rate, regulation, or service fixed by the Commission is just and reasonable, but whether the *order* of the Commission is unreasonable or unlawful. The nature of the inquiry is changed at this point, and the court is not investigating for the purpose of establishing a fixed point. Whether or not the order is within the field of reasonableness, or outside of its boundaries, is the question for the court. It is quite a different question from that which was before the Commission in this respect. The order being found by the court to be such that reasonable men might well differ with respect to its correctness cannot be said to be unreasonable. From this aspect it is within the domain of reason, not outside of its boundaries. This is the viewpoint of the reviewing court. Doubtless the court may, for the purpose of comparison and to aid it in ascertaining how far the order diverges from a reasonable standard, take evidence of and consider such criterion. But this is only for comparison. The court cannot legally adjudicate or declare this statutory standard.

Unless the plaintiff is able to show by clear and satisfactory evidence that the order of the Commission complained

of is unlawful or unreasonable, as the case may be, the order must stand. The words "clear and satisfactory evidence" are significant, because at the time of the enactment of this statute they were used in the law of this state to describe a degree of proof greater than a preponderance of evidence and such as was necessary in order to establish fraud by that party to an action upon whom the burden of proof rested. *Bannon v. Ins. Co. of N. A.* 115 Wis. 250, 258, 91 N. W. 666; *Shaw v. Gilbert,* 111 Wis. 165, 86 N. W. 188; *Dallman v. Clasen,* 116 Wis. 113, 117, 92 N. W. 565; *Harrigan v. Gilchrist,* 121 Wis. 127, 313, 99 N. W. 909. The same rule obtains when the party to an action seeks to prove mistake in a written instrument. *Parker v. Hull,* 71 Wis. 368, 37 N. W. 351. "Clear, convincing, and satisfactory" was the expression used in *Linde v. Gudden,* 109 Wis. 326, 85 N. W. 323, in an action in which it was sought to deny the execution of a deed duly acknowledged. Like words are used in *St. Louis & S. F. R. Co. v. Gill,* 156 U. S. 649, at page 667 (15 Sup. Ct. 484, at page 491), to describe the degree of proof necessary to overthrow a rate fixed by the legislature. We must hold that in the statute before the court the legislature used the words "clear and satisfactory" in this sense, and intended they should describe that degree of proof necessary to establish fraud or prove mistake in a written instrument. We are not able to uphold the contention of the learned attorney general, made in his first brief, to the effect that this court cannot review the order of the commissioners unless the order is confiscatory in its character and effect, and that unlawful and unreasonable in this statute mean confiscatory, because it seems to us that this statute authorizing a review by the court is valid and imposes upon the court duties which it may not disregard. Indeed, the constitution of the state seems to forbid any other interpretation. Art. VII, sec. 8. This court therefore maintains its right and duty to review the orders of the Commission to

the extent authorized by this statute as here construed.   By
the construction here given to the law, considering the degree
of proof required and the viewpoint of the investigation by
the court and that the court is dealing with a question of
fact, or a mixed question of fact and law (*Morgan's La. &
T. R. & S. S. Co. v. Railroad Comm.* 109 La. 247, 33 South.
214), great weight is necessarily given to the orders of the
Commission.

There seems no valid ground of distinction, so far as the
instant case is concerned, between unlawful orders and un-
reasonable orders of the Commission.   An unreasonable or-
der is an unlawful order.   What significance may be found
in the future under different circumstances in the apparently
antithetic use of these terms it is not for us to here decide.
Confiscatory orders are ordinarily, but not always, unlaw-
ful or unreasonable.   In order to be fairly termed confisca-
tory the order must deprive the railroad of a fair return
upon the value of its property, not merely reduce former
rates or charges.   Cases may also arise, no doubt, in which
an order may be unreasonable which falls short of being con-
fiscatory or in which the Commission clearly misapplied
some rule of law; but in the review of questions of fact it
must, under the rules here found, require a very strong case
to establish unreasonableness by evidence clear and satisfac-
tory to the circuit court.   Like the United States supreme
court, we accord to the orders of the Railroad Commission
the weight due to the decisions of a tribunal authorized by
law and informed by experience.   *Ill. Cent. R. Co. v. Inter-*
*state Commerce Comm.* 206 U. S. 441, 27 Sup. Ct. 700.
But we go further than this, and add the requirement of that
particular degree of proof specified in the statute, and we
consider the subject matter and scope of the judicial investi-
gation above referred to.   We thus leave upon the Railroad
Commission the great responsibility which we believe the
legislature intended to impose.   In determining whether or

not the order of the Commission is unreasonable, it must also be considered that every unnecessary burden imposed upon the railroad impairs its net receipts and diminishes that margin, if there be one, between the amount sufficient to assure a fair return on the value of its property, plus the amount of its fixed charges and operating expenses, and its gross receipts. In this margin the public and the railroad are interested, because it is only when this exists that betterments in construction or improvements in service not imperative or indispensable, or reduction in rates, will ordinarily be voluntarily made by the railroad or can ordinarily be ordered or enforced by the Commission. We are not now speaking of those extreme cases where the public duty must be discharged whatever the financial consequences to the railroad. *Covington & L. T. R. Co. v. Sandford,* 164 U. S. 578, 17 Sup. Ct. 198, and cases in Rose's Notes; 3 Cook, Corp. (4th ed.) §§ 900, 901, and cases in notes. But in ordinary cases to waste this margin is to waste the fund in which the whole public is interested. This should never be done for the benefit of the few as against the interests of many. It is also to be considered that this margin ought not ordinarily to be exhausted or swept away by orders or requirements of the Railroad Commission as fast as accumulated, because human nature or railroad nature is such that no one will long economize on operating or other expenses if his economy only furnishes a larger basis for further exactions. The rights of the public and the rights of the railroad under this new law must be ascertained and developed by the Railroad Commission slowly and laboriously, moving from precedent to precedent as new instances arise, after the manner of the common-law courts. As was said in *Bates v. Relyea,* 23 Wend. 336, 341:

"They [these instances] must, from the nature of our legal system, be the same to the science of law as a convincing series of experiments is to any other branch of inductive philosophy."

Patience on the part of the public and on the part of the carrier, and time, will be necessary. The notion that commissions of this kind should be closely restricted by the courts and that justice in our day can be had only in courts is not conducive to the best results. Justice dwells with us as with the fathers, it is not exclusively the attribute of any office or class, it responds more readily to confidence than to criticism, and there is no reason why the members of the great Railroad Commission of this state should not develop and establish a system of rules and precedents as wise and beneficent within their sphere of action as those established by the early common-law judges. We find the statute well framed to bring this about.

With reference to the order appealed from, were this court sitting as a railroad commission it would not have made the order in question, because, while the order is no doubt of great convenience to the dwellers about Dwight, their interest seems to us to be overbalanced by the larger interest of the general public. But this is far from saying that we find the order to be unreasonable or that it appears to us by clear and satisfactory evidence that the order is unreasonable. Competent and reasonable men might differ with regard to the propriety or with regard to the justice and reasonableness of the order before the court. It neither affects the interests of the general public nor the interests of the railroad to any great extent. It is undoubtedly within the power of the Railroad Commission to make such an order. No errors of law appear to have been committed. We believe the circuit court was right in affirming the order of the Commission, and there is no preponderance of evidence against the findings of that court, giving the order of the Commission there in evidence the force and effect to which it is entitled by statute.

*By the Court.*—The judgment of the circuit court is affirmed.

MARSHALL, J. (*concurring*). Although, as said by the court, in effect, the Commission may have gone too far, that does not appear with sufficient clearness to warrant disturbing the approving judgment of the circuit court. The Commission evidently considered the matter with great care, fully appreciating that both sides of the controversy were entitled to consideration. I concur in the decision and in all said in the able opinion for the court by Mr. Justice TIMLIN giving the Commission its proper and distinguished dignity in our governmental system. A code definitely established under the law on the high plane suggested will effect the purpose of regulation: that of preventing injustice upon the one side, and of protecting private property rights upon the other.

I write to state, in a few words, views upon some questions discussed by the court, not suggesting, however, that they differ from those voiced in the opinion.

The words "unlawful" and "unreasonable" were not used in the regulation act as synonymous respecting all situations. Just what the scope of each is, as I view the matter, I will not now undertake to say. That may well be left open for future study and definement.

The legislative scheme embodied in the act, as I understand was conceded upon the argument, is not to take control of railroad property and business from the proprietors, but to supervise the same so as to prevent extortion and injustice and secure fairly adequate service. It contemplates, as I think, that so long as a rate for service is not extortionate or service afforded is fairly adequate the proprietors shall not be interfered with. So, in every hearing upon complaint, the initial and jurisdictional question is whether, in the given case, the conduct of the proprietors is unreasonable. It were better, if it is not necessary, that such jurisdictional fact be shown affirmatively to have been found.

Further, it would seem that in case of the Commission dealing with inadequate service it should require such addi-

tional service as to remove the element of injustice, affording, in the whole, the minimum of what is reasonable, leaving proprietors free and opportunity to give additional service. In case of the Commission dealing with extortionate rates for service it should remove the element of injustice by reducing the rates sufficiently to measure the excess, leaving the proprietors free and opportunity to make further reductions.

The boundaries of reason as applied to service or rates encompass a broad field. The law does not contemplate that the Commission shall make, a selection within that field. Otherwise it would be subject to condemnation as a delegation of legislative power. While it is true that there is but one reasonable rate or degree of service which it is contemplated the Commission shall seek for and name, I do not think that there is only one such rate or degree in a given case which is reasonable in the general sense. There may be many, but the Commission is confined to one, otherwise it would in selecting the proper one exercise legislative power. So the one degree or rate, so far as the Commission is concerned, considering that it is merely to prevent extortion and injustice and compel the giving of service which is fair, is the minimum service or maximum rate.

I think the law contemplates a full judicial review by the circuit court of the action of the Commission when properly challenged, the court to try questions of law and fact the same as the Commission, giving such weight, however, to the decision of the latter on all matters of fact that it shall stand unless shown to be wrong by clear and satisfactory evidence, and, in case of an appeal to this court, that the scope of review shall be the same as in case of any appeal from a judgment in an action tried by the court.

If the regulation system shall be firmly established along the lines indicated it will be upon a logical basis, which cannot be said of such systems generally. The Commission

which has charge of the matter here, backed by opportunity for support by a broad judicial review, subject to the deference which, as indicated, should be given to its decisions, can soon work out a plain course of administration, giving to our commonwealth a distinguished position in the field of safe, adequate, rational regulation.

BASHFORD, J. I concur in the foregoing opinion of Mr. Justice MARSHALL.

DODGE, J. (*dissenting*). The opinion filed on behalf of the court in this case contains so much with which I heartily concur that I am perforce driven to a statement of certain personal views inconsistent with some parts thereof as I apprehend their meaning.

I approach the construction of this very important legislation with the assumption that its purpose was to confer upon the Commission powers and duties which could be delegated to it by the legislature and that the decisions authorized to be made by the Commission referred to in sec. 16 of the act (Laws of 1905, ch. 362) were such as to be capable of judicial review.

To accomplish the first purpose the delegation must not include any essential and peculiar function of legislation. All such power is confided by the constitution to the immediate representatives of the people, with no permission to pass it over to boards or individuals not so chosen. The very essential and distinguishing characteristic of legislative action is choosing between different policies on grounds of expediency, and, when choice is made, in declaring for the future a rule of conduct embodying that policy. There is nothing essentially legislative in ascertaining the existence of a fact or a condition as a basis for such considerations of policy. That is a mental process, common to all the branches of government, executive and judicial as well as legislative.

*Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738;
*In re North Milwaukee,* 93 Wis. 616, 67 N. W. 1033; *Adams v. Beloit,* 105 Wis. 363, 81 N. W. 869; *Nash v. Fries,* 129 Wis. 120, 108 N. W. 210; *Field v. Clark,* 143 U. S. 649, 12 Sup. Ct. 495.

Confronting the question of prescribing services to be rendered and rates to be charged by railways, obviously there arise almost innumerable considerations of policy. Should liberal returns on investment be offered to invite construction and resulting development of agriculture or other kinds of business? Should low rates be made on raw products to promote their sale and shipment at high prices, or is it better policy to impose high rates on the raw products to promote their consumption or manufacture into finished articles at or near home? These are the simplest of illustrations of the multitude of complicated questions of general policy to be decided. The choice of policy in the face of such considerations is legislative and we must presume is not intended to be delegated to the Commission, for the constitution forbids.

Primarily, of course, the owner of a railroad, whether individual or corporation, has the right to conduct his business as he chooses, subject, however, to the limitation, both by common law and by statute, that his charges shall be reasonable. *State v. Milwaukee E. R. & L. Co., post,* p. 179, 116 N. W. 900; *Interstate C. Comm. v. C. G. W. R. Co.* 209 U. S. 108, 28 Sup. Ct. 493. The word "reasonable" in this rule of law is used in its ordinary and usual acceptation, such that its antithesis is "unreasonable." Any rate which is not unreasonable is reasonable and permissible, and the question whether any given rate is unreasonable is to be determined by a process exactly similar to that pursued by courts, which, however, may be exercised by any one or by any official. Independently of statutes the courts can ascertain whether or not such rate be unreasonable. *Madison v. Madison G. &*

*E. Co.* 129 Wis. 249, 108 N. W. 65.   Obviously in this mental process the conclusion is reached by ascertaining the highest rate which can be considered reasonable.    Only when an existing rate exceeds that is it unreasonable. When this point is fixed, however, there is in the nature of things ordinarily a more or less extended field within which rates may vary below that limit of reasonableness until the point is reached which even the legislature cannot impose because so low as to be noncompensatory, or, in the language of the decisions, confiscatory.

The legislature perhaps has full power to forego consideration or decision whether rates charged by a railroad company are unreasonable and may at once arbitrarily impose such rate as they may think promotive of public good, so long as it does not result in depriving the carrier of compensation for its service.   *State v. Redmon,* 134 Wis. 89, 114 N. W. 137.   But under present constitutions it cannot delegate that power to a commission or to a court.   By the statute now under consideration the legislature empowered the Commission first to ascertain whether a rate selected and charged by the railroad is unreasonable, and this is the same function exactly as might have been committed to the courts, indeed which the courts already have by common law upon their judicial power being invoked in a suit brought by any one injured by the unreasonable rates.   *Madison v. Madison G. & E. Co., supra.*   It is an entirely proper subject of delegation, for it is the ascertainment of a fact or condition; vastly complicated, it may be, but still ultimately a conclusion of fact.   I think it clear that the law does not authorize any further action by the Commission until or unless the fact is established that the railroad has committed a breach of its duty by charging an unreasonable rate or furnishing a not reasonably adequate service.   The law evidently contemplates, and to be valid must contemplate, that, when this fact of unreasonableness exists, the Commission shall de-

clare *the* reasonable rate; and right here is my point of divergence from what I understand to be the view expressed in the opinion of the court. I think that the two words—"unreasonable" as applied to the rate charged by the railroad company and "reasonable" as applied to the duty of the Commission to ascertain and declare one—are exactly antithetic expressions, and that the fields relatively described by them are coterminous, namely, the field of unreasonableness of a rate terminates where reasonableness begins and that the function of the Commission is to ascertain this exact line of demarkation. They are not merely to declare that the rate charged by the railroad is unreasonable, but they are to define that rate, excess over which is unreasonable. That, of course, in the matter of rates, means the highest rate consistent with reason. For example, when the three-cent passenger rate in this state was attacked, the duty of the Commission was to proceed to consider, first, whether it was so unreasonable, and, second, how far it transcended that which would be reasonable. Presumably their mental action in fixing a rate at two and one-half cents was in response to this duty, and their order established, by a judicial and not legislative process, that anything in excess of two and one-half cents would be unreasonable. So considered, the statute became effective and declared that two and one-half cents should be charged. But this in no way precluded the distinctly legislative act subsequently performed by the legislature of declaring that public policy required the rate to be two cents, subject only to the right of courts to ascertain whether the lower rate would result in confiscation. Unless this is the duty imposed upon the Commission, their act is in no sense the ascertainment of a fact and cannot be reviewed by a court *de novo*. If the Commission, recognizing and deciding that two and one-half cents would be within the limits of reasonableness, had then determined that from considerations of public policy two cents only should be

charged, they would have done that which no court could review and which the constitution requires shall be done only by the legislature.

Now in this case, in proceeding to review the order of the Commission, I think the court must start with the assumption that they have performed this duty and decided that in their opinion the service required of the railroad company by the order assailed marks the minimum limit of that service which they find to be reasonable, and upon that assumption review of their decision is an entirely judicial function which can legitimately be performed by the courts, and if the court finds, after consideration of all evidence, giving due deference to the perhaps superior expert knowledge of the members of the Commission, that a less service would be within the field of reason, the order should be held unlawful, because an erroneous decision of a concrete question of fact. If, however, we must start with the assumption merely that the Railroad Commission have kept within the field of reasonableness, and in exercise of their judgment upon questions of general policy and expediency have merely selected some point within that field, then the court is given no practical or efficient review of the Commission's real decision; for the court can only inquire, as is said in the opinion, whether the service ordered or the rate fixed is unreasonable in the sense that it is outside the field of reason.

I find in the opinion of the court the following:

"This law establishes, and thenceforth assumes, the existence of rates, charges, classifications, and services discoverable by investigation, but undisclosed, which are exactly reasonable and just. . . . The law intends that there is only one rate, charge, or service that is reasonable and just. . . . But the theory and mandate of the law is that this point always exists under any combination of conditions, and is always discoverable although not always discovered. Until it is discovered and made known the former rates and service prevail. The order of the Commission is *prima facie* evi-

dence that the rate, charge, or service found and fixed by it is the particular rate, charge, or service declared by the legislature in general terms to be lawful and to be in force."

In this to my mind lurks solecism. If it be a fact, as seems to me unquestionable, that there is no fixed point of reasonableness, that there is almost invariably a broad field wherein any one of several points would be reasonable, the legislature cannot by mandate or *ipse dixit* change that fact. Courts cannot by act of legislature be deprived of their judicial knowledge of those facts which in the course of nature exist. They must take note of the fact that the sun rises in the east, notwithstanding legislative fiat to the contrary and notwithstanding power may in terms be conferred upon some tribunal to establish the opposite. Where, as seems to me undeniable, the existence of any fixed point in this field of reasonableness, other than the two extremes, can be ascertained only by exercise of choice based on policy or expediency, the courts cannot shut their eyes to the fact that a delegation of authority to find and declare that point is a delegation of authority to exercise legislative choice. *Dowling v. Lancashire Ins. Co.* 92 Wis. 63, 65 N. W. 738. The court's opinion seems to me to concede that the duty of the Commission in selecting and declaring a specific rate or service involves something more than mere discovery of a fact, for it proceeds to assert the inability of courts to review such act of the Commission. It is there said that the court can only inquire whether the point fixed by the Commission is "within the field of reasonableness," thus implying that more than one such point might have been selected within such field. If the fiat of the legislature can, as said, be effective to create some one definite and fixed rate which is reasonable to exclusion of all others, and that such exact point can be ascertained by processes not legislative, why cannot such fact be ascertained by the court as well as the Commission? If, as said, there is then only one reasonable rate

or service, any variation from that ideal is of course legislatively unreasonable, and the court, if convinced by the proof that the ideal is something different from the Commission's order, obviously must adjudge that order unlawful.

I think, therefore, that this law should be so construed as to indicate to the Commission a duty to find the reasonable rate which is antithetic to the unreasonable one which the law condemns, and that point of reasonableness is the maximum rate or minimum service consistent with reason. So construed and conscientiously applied, I fully agree in the constitutionality of the law and in the hope of high value to the public of the services of an able and expert commission. If that be the construction, I find no longer any difficulty with the purpose of protection against injustice to the railroad companies afforded by a judicial review *de novo* of the very fact which the Commission finds and decides. This construction recognizes the reserved right in the legislature, performing its constitutional duty, to impose other rates than this maximum reasonable one, and preserves to the people and to the railroad companies the assurance that the resolution of questions of expediency and public policy shall rest with the representatives of the people responsible directly to them at the ballot box.

My dissent from the judgment announced is upon the ground that I cannot convince myself that the service rendered by the railroad company at the time of the complaint to the Commission was other than reasonably adequate. I deem this a jurisdictional fact essential under the statute to the Commission's authority to prescribe any service or rate. *Interstate Commerce Comm. v. C. G. W. R. Co.* 209 U. S. 108, 28 Sup. Ct. 493. Neither the Commission nor the court below has made any finding upon that subject. Since my view cannot prevail in the case, I deem it wholly unnecessary to discuss the evidence and considerations bearing upon the reasonable adequacy of that service.