Mississippi Railroad Commission *v.* Mobile & O. R. Co.
ET AL.

[75 South. 778, Division A.]

1. Railroads. *Injunction. Order of railroad commission. Establishment of station.*
   Where a railroad company objects to the reasonableness of the orders of the railroad commission, in requiring the erection of a new depot, injunction is the proper remedy, since in such case the commission in making such order was acting in its legislative or administrative capacity and not in a judicial or *quasi* judicial capacity.

2. Action Attacking Railroad Commission's Order. *Burden of proof.*
   Under Code 1906, section 4836, so providing, the order of ·the railroad commission establishing a depot was *prima-facie* correct and proper and one who attacks such order has the burden of proving its unreasonableness by "clear and satisfactory evidence."

*l*

102   Miss. R. R. Comm. *v.* Mobile & O. R. Co.   [Sup. Ct.

Brief for appellant.                          [115 Miss

3. Review of Chancellor's Decree Disapproving Railroad Commission's Orders.

The decree of a chancellor, disapproving the orders of the railroad commission, requiring the erection of a railroad depot, will be given the same force and effect by the supreme court on appeal as other decrees by the chancellor, and if there was testimony upon which the chancellor could have made his decree, his findings will not be disturbed on appeal.

4. Same.

In this case the court held that there was evidence sufficient to sustain the decree of the chancellor in disapproving the order of the railroad commission requiring the erection of a new passenger depot.

Appeal from the chancery court of Hinds county.

Hon. O. B. Taylor, Chancellor.

Bill by the Mobile & Ohio Railroad Company and another against the Mississippi Railroad Commission, to enjoin the commission from executing its order requiring the erection of a passenger and freight depot and alteration of tracks. From an order making the injunction perpetual, the commission appeals.

The facts are fully stated in the opinion of the court.

*Ross A. Collins,* attorney-general, for appellant.

The chancellor tried the case as though he had original jurisdiction to make the orders made by the railroad commission. He should have either sustained the orders or held that they were unreasonable or unlawful. On this point I refer the court to the case of *Minn., St. P. & S. Ste. M. R. Co.* v. *Railroad Commission,* 17 L. R. A. (N. S.) 821; *Bannon* v. *Insurance Co. of N. A.,* 115 Wis. 250, 258, 91 N. W. 666; *Shaw* v. *Gilbert,* 111 Wis. 165, 86 N. W. 188; *Dallman* v. *Clasen,* 116 Wis. 113, 117, 92 N. W. 565; *Harrigan* v. *Gilchrist,* 121 Wis. 127, 313, 99 N. W. 909; *Illinois C. R. Co.* v. *Interstate Commerce Commission,* 206 U. S. 421, 51 L. Ed. 1128, 27 Sup. Ct. Rep. 700; *Chicago, R. I. & P. R. Co.* v. *Nebraska Railroad Commission,*

reported in 26 L. R. A. (N. S.) on page 448; *Morgan's L. & T. R. & S. S. Co.* v. *Railroad Commission*, 33 So. 220; *Atlantic Coast Line R. Co.* v. *North Carolina Corp. Commission*, 206 U. S. 1, 26, 51 L. Cas. 398; *Smyth* v. *Ames*, 169 U. S. 466, 42 L. Ed. 819, 18 Sup. Ct. Rep. 418; *I. & L. R. Co.* v. *Railroad Commission*, 38 Ind. App. 349, 78 N. E. 338, 79 N. E. 520; *Steenerson* v. *Great Northern R. Co.*, 69 Minn. 353, 72 N. W. 713.

For further reference to authorities on the power of courts of appeal from the orders of the Railroad Commission, see case note 49 L. R. A. (N. S.) 570. The proper remedy for the railroad was not an injunction but a writ of prohibition. Counsel in his last brief discusses mainly the question as to whether *certiorari* was the proper remedy and maintains that it would not be the proper relief. While I have doubts on this proposition, it is my judgment that a writ of prohibition was the proper remedy, and I do not think that the court had any right to grant an injunction.

Power of the railroad commission and attitude of the courts towards this body. Section 186, of the Constitution of the state of Mississippi, directs the legislature to provide suitable laws to prevent discriminations and extortions and enjoins upon it the duty to enact laws for the supervision of the common carriers by a commission or otherwise. I think that there can be no question about the power of the legislature, itself, independent of this constitutional provision, to enact any law necessary for the regulation of railroads. In the absence of constitutional restrictions, it could provide by special or general laws, any regulation for the government of railroads, and provide for the erection of suitable depots at any point that in the judgment of the legislature was proper.

It is familiar learning that a railroad company is a public service corporation; affected by the public use and existing for public benefit and convenience. It is a highway under our Constitution and exercises a portion

of the powers of the sovereign state itself. Every person is forced to patronize it who carries on any business whether he wills to or not. Because of these powers derived from the state, the said railroad company owes the public the duty of managing and transacting it business in such manner as the public convenience requires and it cannot judge what the public convenience requires, but the legislature itself, or such body as it has delegated to and vested with these powers, is the judge as to what is necessary for the convenience of the public. The constitution expressly authorizes the legislature itself, or a commission to regulate these roads. The legislature has seen proper to vest these powers in the Railroad Commission and the Commission has full and plenary power given it by the legislature to deal with this subject-matter, and the acts of the Commission are therefore as efficacious and far-reaching as an act of the legislature itself would be.

I earnestly submit that the court should go as far as possible to sustain the action of an important administrative body like the Railroad Commission and should give the railroad Commission credit for the benefit of the knowledge and experience required in discharging those duties.

The courts of this state heretofore have seemingly been hostile to the powers of the Commission, and seemingly have been disposed to restrict the Commission in the exercise of the discretion conferred upon them by law and have been disposed to ignore the fact that the Constitution itself enjoined upon the legislature the enactment of laws for the proper supervision of these roads. Inasmuch as this is a constitutional grant of power to the legislature, and is to be exercised for the protection of the public, it ought to be liberally construed for the purpose of giving the commission power to make the necessary orders to meet the conditions growing out

of the progress, change and differences of conditions that rise from time to time.

The Federal courts have looked with favor upon the Interstate Commerce Commission and their decisions give vitality to this important branch of the Federal Government, while our courts have restricted and limited this commission and have rendered it almost powerless for good. The following extract from a decision of the Wisconsin court in the *Minn. St. P. & S. Ste. M. R. Co.* v. *Railroad Commission Case, supra,* shows how other states regard this important subdivision of the government. "Patience on the part of the public and on the part of the carrier and time, will be necessary."

The notion that Commissions of this kind should be closely restricted by the courts, and that justice in our day can be had only in court is not conducive to the best results. Justice dwells with us as with the fathers; it is not exclusively the attribute of any officer or class; it responds more readily to confidence than to criticism; and there is no reason why the members of the great Railroad Commission of this state should not develop and establish a system of rules and precedents as wise and beneficial within their sphere of action as those established by the early common-law judges.

I most earnestly insist that this judgment should be reversed and a decree entered here directing the railroad companies to comply with the order made by the Railroad Commissions.

*Carl Fox,* for appellee.

The commission exhausted its power to designate the location of a union passenger station at Corinth when it required the present union passenger depot to be built in the Southeast angle in 1902-3. It is axiomatic that the Railroad Commission has no power, and can acquire none, except that with which the legislature has invested

it. *State* v. *A. & V. R. Co.*, 67 Miss. 647; *State* v. *Y. & M. V. R. Co.*, 87 Miss. 679, 40 So. 263; *G. & S. I. R. Co.* v. *Railroad Commission*, 94 Miss. 124, 49 So. 118.

The Commission does not of itself grow in power, nor can the court concede to the Commission any power except such as is to be found in the language of the legislature. The origin of the present statute is to be found, we believe, in section 2, chapter 26 of the Laws of 1888, page 45, which reads as follows: " . . . This said board is also authorized to designate the site or location of any new depot building or station house that may be ordered built in cases where the site selected by the railroad company required to erect the same is deemed inconvenient or inaccessible; . . . having in view the interest of the public and the railroad company: . . . They shall, where in their judgment, the occasion and the public convenience require it, cause union passenger depots to be erected . . . and designating the site and dimensions of the same."

In the Code of 1892, the two provisions with reference to the location of depots and the construction of union depots were separated, and appear with no change in meaning and almost in the same words as section 4309 and 4310.

After the adoption of the Code of 1892, the case of *State* v. *Railroad Company*, 87 Miss. 679, 40 So. 263, involving the validity of an order of the Commission to erect a new passenger depot, was decided by Judges Calhoun and Truly, Judge Whitfield dissenting.

Judge Calhoun said: "The statutes, as we think, have reference to the original establishment of depots, to the location of new ones desired by the company, and to make those already established sufficient in accommodation, and necessary facilities;" and again once erected and in operation, especially as in this case for so many years, we do not think the law designed to give the power to order new depots to suit varying conveniences."

Judge Truly concurred with Judge Calhoun in affirming the case, but expressed no opinion on the question of the power to order a new depot and to designate its location in a town where one is already built and in operation. The language of Judge Calhoun's opinion, therefore, which we have quoted, was his opinion alone, nevertheless, in the Code of 1906, in which the statute was brought forward as section 4863, it was amended evidently because of Judge Calhoun's opinion, so as to read as follows:

"Where the site selected by the railroad officials for depot buildings or a station house erected or to be erected is inconvenient or inaccessible, the Commission may order the erection of a new building or station house and designate its site or location; but every depot must be located with due regard to the interest of the railroad and the public convenience."

There was a transposition of different parts of the section, but the sole change in its meaning was brought about by the interposition of the word "erected." Evidently Judge Calhoun's opinion called the attention of the legislature to what they considered a defect in the statute; and yet when the legislature amended the section so as to make it apply to depots erected and in operation as well as to new depots which had not yet been built, the restriction on the power of the Commission to cases where the site of the old depot had been "selected by the railroad officials" was carefully retained.

It is perfectly plain that the legislature deliberately and with a definite purpose to be just to the railroad companies limited the power of the Commission in the location of new depots to those cases in which the site of the old depot had been selected by the railroad officials. The legislature deliberately put it out of the power of the commission to require a new depot to be erected on a new site, after a former commission had required a depot to be built and had selected the site.

In the court below it was argued that the Commission had power under section 1858 of the Code to require the relocation of the depot. We think instead of being authority for the power claimed in this case, this section furnishes a powerful argument that the commission had not any power merely because of the inconvenience of location of a depot to order a new one built, except in cases covered by section 4863. There would be no reason for section 4854 if it were not that passenger depots are frequently inconveniently located for a great many of the people living in cities who use them. It is because they are frequently inconveniently located that the legislature empowered the Commission to require railroads to permit passengers to get on and off in cities at places other than at the depot. By section 4854 the legislature provided a remedy for certain evils not covered by section 4863.

Besides, section 4863 deals specifically with the location of depots by the Commission, and section 4854 does not. In such case the specific and not the general statute governs.

## WHAT IS THE LAW OF THIS CASE?

Section 4863 of the Code, by which the Commission is vested with power to order the erection of depots, requires that "every depot must be located with due regard to the interest of the railroad and the public convenience."

"The interest of the railroad" will very frequently be diametrically opposed to "The public convenience;" but in the very nature of things the railroads cannot in every case, without unreasonable sacrifice, secure to the public the greatest convenience of which the situation is capable. It is inevitable that frequently there must be a compromise between the interest of the railroad and the public convenience. If railroads could transport passengers and freight free of charge, it would be the great-

est convenience to the public. If they could charge whatsoever they please it would be to the greatest interest of the railroads. There must be a compromise between the two extremes. That is what that part of section 4863 quoted above means. *Oregon R. R. & N. Co.* v. *Fairchild,* 224 U. S. 510; *Atlantic Coast Line R. R.* v. *North Carolina Commission,* 206 U. S. 1, 27; *Missouri Pacific Ry.* v. *Kansas,* 216 U. S. 262.

There seems to be a suggestion in the attorney-general's brief that this court should go behind the decree of the chancery court and undertake on the evidence in this case to uphold the order of the Railroad Commission because of the presumption in favor of its validity, just as if this court were sitting as a trial court; and the attorney-general copies a considerable part of the opinion in *Rock Island and Pacific R. Co.* v. *Ry. Commission,* 85 Neb. 818, 124 N. W. 477, 26 L. R. A. (N. S.) 444. We have no quarrel with that case, and we think it is right and proper that any order of the Railroad Commission should be held *prima facie* to be valid and correct. We do not think it makes any difference in this case whether the court occupies the chancellor's bench or whether it reviews this case as the appellate court that it is, because we do not think any reasonable man can reach any other conclusion than that embodied in the decree. But we do think that the rule ought to be properly stated.

In the case referred to which was cited by the attorney-general, the trial court upheld the order of the Railroad Commission, and the appeal was by the Railroad Companies. In this case the chancellor found that the order of the Commission was unreasonable, and the appeal is by the Commission. In that case the railroad companies carried the burden that was upon them in the trial court with the superimposed burden of the presumption in favor of the validity of the decree of the trial court. In the case at bar the Commission, and not the

railroads, carries the burden of showing that the chancellor's decree is erroneous.

The law does not vest the order of the Railroad Commission with any greater dignity than the decree of the chancellor. The decree is the resultant of all of the forces in the case, including the presumption in favor of the validity of the order as well as the testimony of the witness and other evidence.

The presumption is that the chancellor gave full weight in his consideration of the case to the presumption in favor of the validity of the order. The chancellor dealt with the validity of the order; this court deals with the validity of the decree. The law presumes that the chancellor's decree is correct; and, necessarily, when that presumption arises upon the signing of the decree, the presumption in favor of the validity of the order of the Commission disappears. There cannot exist at the same time a presumption in favor of the correctness of the decree and a presumption in favor of the validity of the order, because the decree says that the order was invalid; and therefore the presumption in favor of the decree is a presumption that the order was invalid. If this were not true then an order of the Railroad Commission could not be set aside by a judgment or any court, because in spite of the judgment there would still be a presumption of law that the order is valid.

In this case as in every other case appealed from the chancery court of appellant (the Commission) has the burden of establishing by the record that no reasonable man could have reached the conclusion expressed by the decree. What the chancellor decided was, that the evidence in favor of the railroad companies was of sufficient weight to overcome the presumption in favor of the validity of the Commission's order. The question therefore, for this court to decide is whether any reasonable man could have reached the conclusion that

there was sufficient evidence to overcome the presumption.

SYKES, J., delivered the opinion of the court.

The Mississippi Railroad Commission was petitioned by the Business Men's League of Corinth to require the Mobile & Ohio and Southern Railroad Companies to construct a new union passenger depot in the city of Corinth. These two railroads cross each other at almost right angles. The present union passenger station is now situated in the southeast angle, south of the Southern Railroad, and east of the Mobile & Ohio Railroad. The petitioners asked that the union passenger station be located in the northeast angle. The principal reason alleged for this change in location was in order to prevent passengers and other parties having business at the union station from crossing the tracks of the Southern Railway Company at Filmore street crossing, which is one of the principal streets of Corinth, and which is a dangerous crossing. The Southern Railroad at that time maintained nine tracks over this crossing. It was also alleged that the depot accommodations were insufficient. Already located at that time in the northeast angle—which, by the way, is an obtuse angle, as the two railroads do not exactly cross at right angles—was situated the freight depot of these two railroad companies, and also, as a necessary adjunct to the freight depot, a great many tracks for switching were therein situated. The business portion of the town of Corinth, and a great many residences therein, are also situated in this northeast angle. If the passenger depot were located in that angle, then it would obviate the necessity of crossing over the tracks of the Southern Railway Company at Filmore street crossing.

The members of the Railroad Commission personally examined the present union passenger station and the

freight depot and railroad tracks and all the four angles. They also took oral testimony on the question, and passed an order requiring the railroad companies to construct a new union passenger depot in the northeast angle. The present passenger depot was built about ten years ago, and was the result of a citation originally issued by the Railroad Commission to these two companies, to know why it was not necessary for them to build a union passenger depot. After many continuances of that investigation, the Railroad Commission and the railroad companies, without any orders, tacitly agreed on the location of the present passenger depot. Some months after the railroad companies were ordered to build a new passenger station in the northeast angle, the one here in controversy, on subsequent petitions and an examination, these companies were further ordered to erect a new freight depot and alter certain switch tracks, also, in the northeast angle, and some across Filmore street. In other words, the orders of the Commission here involved are: First, an order requiring a new passenger depot in the northeast angle; and the subsequent orders requiring a new freight depot in the same angle, and switch-track alterations. These orders require the railroad companies to build a freight depot and switch tracks in this angle and also a passenger depot which would be in the switchyards of the company. A bill was filed by the railroad companies, enjoining the Commission from executing the order requiring the erection of the passenger depot. Subsequently to the filing of this bill, the subsequent orders requiring the erection of the freight depot and alteration of tracks were entered, and a bill of injunction was filed to enjoin the Commission from putting these orders into effect. Both these bills were filed in the chancery court of Hinds county, and by agreement the two suits were consolidated. In the trial in the chancery court,

the defendant companies admitted the reasonableness of the order as to the freight depot and track facilities, but contended that the order as to the passenger depot was unreasonable. The case was tried before the chancellor, and a vast amount of testimony was introduced before him. The question for determination was whether or not the order of the Commission requiring the erection of this passenger depot in the northeast angle was reasonable or unreasonable.

The question is raised, but not seriously argued, that injunction was not the proper procedure by these companies. However, the Commission was not acting in a judicial or *quasi* judicial capacity in ordering the building of these depots. It was acting in its legislative or administrative capacity in doing so, and its procedure was proper, as is borne out by the authorities, which we deem it unnecessary to cite.

The principal contention of the Railroad Commission in this court is that under section 4836, Code of 1906, which reads as follows:

"Findings in Writing; Proof of; Effect of.—All findings of the Commission and the determination of every matter by it shall be made in writing and placed upon its minutes, and proof thereof shall be made by a copy of the same duly certified by the secretary under the seal of the Commission; and whenever any matter has been determined by the Commission, in the course of any proceeding before it the fact of such determination, duly certified, shall be received in all courts and by every officer in civil cases as *prima-facie* evidence that such determination was right and proper; and the record of the proceedings of the Commission shall be deemed a public record, and shall at all seasonable times be subject to the inspection of the public," the order of the Railroad Commission in this case was *prima-facie* evidence that it was right and proper, and that the lower court should have sustained this finding

115 Miss.—8

114   Miss. R. R. Comm. *v.* Mobile & O. R. Co.   [Sup. Ct.

Opinion of the court.                    [115 Miss.

unless the testimony showed "by clear and satisfactory evidence that the order of the Commission complained of is unlawful and unreasonable;" that if in this trial there were two reasonable theories, one that the order of the Commission was reasonable, the other that it was unreasonable, then it was the duty of the chancellor to uphold the order of the Commission. *Minneapolis, etc., R. Co.* v. *Railroad Commission,* 136. Wis. 146, 116 N. W. 905, 17 L. R. A. (N. S.) 821. The above.statute makes the findings of the Railroad Commission *prima-facie* evidence that they are right and proper. One who attacks an order of the Railroad Commission has the burden of proof resting upon him of establishing to the satisfaction of the lower court that the order of the Commission is not reasonable. This statute is perfectly plain and unambiguous. It was the duty of the lower court to give to the findings of the Railroad Commission the benefit of this statute. Without reviewing all of the testimony introduced before the chancellor, it is sufficient to say that, from this testimony, he could have found, as in fact he did, that the greatest part of the danger at Filmore street crossing would be obviated by the removal of certain switch tracks ordered to be removed by the Railroad Commission.

It was contended, and testimony was introduced by the railroad companies, that there was not sufficient ground in the northeast angle at its disposal to maintain the union passenger and freight depots and all the necessary switch tracks.in that angle; that it would be highly dangerous, inconvenient and improper to maintain a passenger depot in such close proximity to the freight yards; that the passenger depot was practically a new .one, was adequate and sufficient and convenient to the public and to the railroad companines, and that it would be unreasonable and confiscatory to require these companies to build another passenger depot just across the track from the site of the present one; that

Mar., 1917] Miss. R. R. Comm. v. Mobile & O. R. Co. 115

115 Miss.] Opinion of the court.

if the present one was inadequate it could be sufficiently enlarged to meet the views of the Commission and of the complaining parties. This testimony fully sustained the contention of the railroad companies. Practical railroad men, familiar with these matters, testified to this effect. Railroad civil engineers, some in the employ, and some not connected with the companies, testified that it would be impracticable to obey the orders of the Commission. On behalf of the Commission, the commissioners testified, giving their judgment that their orders were just and proper and reasonable, and that they believed these two depots and certain switch tracks could be maintained within this angle; that, in their judgment, it was not necessary to put all the tracks the railroads wanted in this angle; that certain tracks could be placed in other places by the railroad, where they would be just as useful and convenient to the railroad and to the public. A number of business men of the highest standing in the city of Corinth testified to facts sustaining the orders of the Commission. Only one expert engineer testified for the Commission. He had never been to Corinth, and only testified from certain maps and blueprints submitted to him on behalf of the Commission.

The chancellor, after hearing and considering the testimony, decided that the order to remove the passenger depot was unreasonable, and the injunction was made perpetual in that particular. He also decided that the present union station was inadequate, and ordered certain changes made in it and certain work done at the Filmore street crossing. The railroad company has not prosecuted an appeal from the latter part of this order; the Commission being the sole appellant. We are not therefore called upon to review the latter part of this decree.

It is earnestly insisted by the appellant in this case that this court, in reviewing the decision of the chan-

cellor, should not give it the same weight and consideration on its findings of fact that it does in ordinary cases, but that we should view this case just as if we were the lower court trying the case and give to the order of the Commission the weight it is entitled to under section 4836 of the Code. Numerous decision are cited by counsel for the appellant as to what effect should be given the finding of the Commission. These decisions, however, relate only to the effect to be given to this finding by the lower court, or by the appellate court when the lower court has sustained these findings of the Commission. In the case at bar, however, the chancellor decided that the order of the Commission was unreasonable. To this decree we give the same force and effect that we do to all other decrees of the lower court. In other words, if the chancellor could have so found under the testimony, then we will not disturb his findings here. The case now under review comes to us with the finding of fact of the chancellor that the order of the Commission relating to the passenger depot is unreasonable. The decree specifically so states. There was testimony under which the chancellor could have so found. We cannot try the case in this court, as it was tried in the lower court. We give to this decree the same force and effect that we give to the decrees of all the chancery courts. The chancellor also held the orders of the Commission relative to the building of a new freight depot and the alteration of the switch tracks to be reasonable, and dissolved the temporary injunction and dismissed the bill in that case. No appeal was prosecuted from this decree of dismissal.

We, therefore, decline to disturb the findings of fact of the chancellor, and the decree is affirmed.

*Affirmed.*